[Civil No. 2883. Filed November 10, 1930.]

[293 Pac. 16.]

ARIZONA STORAGE & DISTRIBUTING COMPANY, a Corporation, Appellant, v. THOS. H. RYNNING and MARGARET E. RYNNING, Appellees.

Messrs. Sloan, Holton, McKesson & Scott, for Appellant.

Mr. J. E. Morrison and Mr. Hess Seaman, for Appellees.

ROSS, J.—The plaintiffs delivered to defendant, as warehouseman, for storage, certain household goods

and furniture, books, paintings, Indian baskets and plaques, wearing apparel, linens, china and cut glass, including a number of curios, etc. This action was brought to recover damages for their conversion. Judgment having been rendered for plaintiffs upon the verdict of the jury, the defendant appealed assigning various reasons of appeal.

This property was stored with defendant on June 11, 1923, and was sold, after due notice and advertising, by it on January 18, 1927, to satisfy a claimed lien for storage charges. Defendant claimed a balance due at the time of sale of $22.75, whereas the plaintiffs claimed they owed the defendant nothing, but on the contrary had overpaid storage charges at the time of sale. This was the principal issue.

There was introduced in evidence a warehouse receipt dated June 11, 1923, embodying the essential terms of such receipts as required by sections 2 and 3 of the Uniform Warehouse Receipt Act, chapter 47, Laws of 1921 (chapter 80, Rev. Code 1928 [sections 3226, 3227]); and there was also inserted in such receipt "other terms and conditions," the validity and applicability of which are involved. The receipt, or rather those portions of it that here have a bearing, we copy:

"Received and held in storage for Mrs. Margard E. Rynning, Address 1714 Arbor Drive, San Diego, Calif. in the warehouse of the above Company, located at . . . the goods listed below, the storage on which will be $3.50 per month or any part of month, under the following terms and conditions: . . .

"2. A bill for first month's storage due on receiving this receipt; thereafter bills payable monthly.

"3. All dues must be paid before goods are transferred or delivered.

"4. Goods on which charges remain unpaid may be sold as provided by law. . . .

"8. The responsibility of the above Company for contents of any one piece or package is limited to the sum of $50.00, unless the value thereof is made known

at the time of storage and receipted for, and an additional charge made for the higher valuation. . . .

"10. It is agreed that said goods shall be stored at the owner's risk of damage by fire, moth, vermin, heat, rust, leakage, the elements, the acts of Providence or the public enemy, theft at or after fire, loss as result of proper sale by legal process for non-payment of charges or depreciation by time. . . .

"12. If the articles listed hereon are not correct, and if the terms and conditions named are not satisfactory, notify us in writing within ten days, otherwise it will be understood and agreed that this storage receipt is accepted in its entirety. . . .

"The merchandise listed on this receipt is subject to sale within 6 months from date for non-payment of charges accrued." ·

This receipt bears the signature of the defendant, but was not signed by either of the plaintiffs. On the receipt, under the heading "Schedule," the property was listed as follows:

"One Crated Tray Wagon
"Two Bbls
"One Book Rack
"One Mattress
"One Cot
"Eight Boxes
"One Tennis Marker
"One Crate of Glass
"One Bdl of Shelves
"One Crated Chest
"1 Crated Sewing Machine
"2 Bdls of Bedding."

Plaintiff Margaret E. Rynning testified that two men came to her house driving a truck bearing the name of the defendant, and that she delivered the property to them; that at the time of such delivery one of them asked her to pay him $10 on account of storage, which she did, taking a receipt therefor. This testimony was admitted over the objection of defendant that there was no showing that the driver had any authority to request or accept in behalf of defendant payments on storage. This ruling is de-

fendant's first assignment. This $10, if paid to such driver, was not credited on defendant's books, and defendant denies receiving it. That plaintiff did pay such sum at the time of delivery of goods to the driver of defendant's truck is corroborated by plaintiffs' two daughters, Margaret A. Rynning and Linda Marie Rynning, who testified they were present and witnessed the transaction. Defendant's books show that one Ralph E. Rewick was in charge of the Rynning transfer to the defendant's warehouse, but he testified he had no recollection of the transaction. He stated, however, that it was not customary for drivers of trucks to make collections on storage. Plaintiff Margaret E. Rynning also testified that at the same time and place the driver delivered to her a duplicate warehouse receipt for the goods. Here again Rewick's memory was blank, but he said it was not the custom for drivers to deliver or issue warehouse receipts.

It is the contention of the defendant that the driver of the truck must not only have been authorized by it to collect storage charges, but that the burden of proving such authority was on the plaintiffs. We agree that when one pays money to discharge or to be applied upon an obligation, if he pays it to anyone except the creditor, he does so at the risk of being able to establish that such one had authority to accept and receipt for the money. The agency to do a thing may be actual or it may arise from implication. It is said acts within the apparent scope of the agent's authority will bind the principal, because, although the power to do the thing was not actually conferred, its exercise had been permitted by the principal. 21 R. C. L. 854, § 34. In this case, if the evidence of plaintiffs is to be believed, the driver of the truck not only accepted the $10 and issued receipt therefor, but at the same time and place had in his possession and delivered to the plaintiffs a duplicate of the ware-

house receipt. The latter, under the law, is supposed to be both a receipt for plaintiffs' goods and a contract between the depositor and depositary. It recites that the "first month's storage (is) due on receiving this receipt"; in other words, a condition of the receipt was that the first month's storage should be paid on its delivery. This was direct authority to the person delivering the receipt to accept at least the first month's storage; it was an implied authority to such person to accept payments of storage. We think, when the driver was given possession of the warehouse receipt and directed, as he must have been, to deliver it to the plaintiffs upon the payment of the first month's storage, he was thereby clothed with authority to accept further payments, justifying the depositors in paying upon his demand the sum of $10 to be applied on future monthly dues.

The general rule laid down for determining whether a given state of facts will give rise to an implied agency is stated in 2 Corpus Juris, 435, section 32, as follows:

"The relation of agency does not depend upon an express appointment and acceptance thereof, but it may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. It may be implied from a single transaction, but it is more readily inferable from a series of transactions. An implied agency must be based upon facts, and facts for which the principal is responsible; and upon a natural and reasonable, but not a strained, construction of those facts, as the facts must be such as naturally to lead another to believe in and to rely on the agency. It is often difficult to determine upon general principles whether any agency exists; rather it must be determined from the facts and circumstances of the particular case, and if it appears from such facts and circumstances that there was at least an implied intention to create the relation, it will by implication be held to exist."

The driver of the truck, as such, was doubtless nothing more than a servant of the defendant, and in that relation was limited to calling for and delivering plaintiffs' property to defendant's warehouse, but, when power and authority to deliver the warehouse receipt and to look after the details thereof were conferred on him, he became more than a servant and performed functions appertaining to agency. Although the question is not entirely free from doubt, we conclude, under the facts and circumstances here presented, the ruling of the court, admitting evidence of the payment of the $10 to the truck driver to be applied on storage, was correct.

The second assignment is that the evidence is not sufficient to entitle the plaintiff to recover a judgment. This brings up the disputed question of indebtedness. The storage charges amounted to $106.50, drayage $3, and cost of notice $1, or a total of $110.50. This amount is not disputed by the plaintiffs. Defendant admits payments thereon by plaintiffs of $95, and no more. Plaintiffs, however, introduced evidence of a payment of $10, which evidence we have held, under our discussion of assignment 1, was properly admitted. Mrs. Rynning also testified to sending to defendant, in addition to the above sum, a postal money order for $7.75. Whether these payments were in fact made was under the facts very properly left to the jury. If the jury believed they were made, defendant was overpaid $2.25. If neither was paid, there was due defendant $15.50. If only $10 was paid, the balance was $5.50; or, if only $7.75, the balance would be $7.75. Whether the jury rejected both of the disputed items or allowed both, or rejected one and allowed one, we have no way of knowing. The possibilities here suggested are important only on the question of the right of the defendant to advertise and sell the property when it did, and this brings us to the third assignment.

Under the terms of the warehouse receipt the first month's storage was due and payable on the delivery of the receipt, and "thereafter bills (were) payable monthly." Section 33 of the Uniform Warehouse Receipt Act (Rev. Code 1928, § 3252) provides that "a warehouseman's lien for a claim which has become due may be satisfied" by a sale of the goods after notice and advertising as therein set forth. Defendant insists that under the law and the agreement contained in receipt it had a right to foreclose its lien for any past-due storage charges. We think the law gives the warehouseman that right, but it is a privilege which he may waive. He may forego collecting by sale or he may postpone his right to proceed at once to some future date without violating the law. Section 3 of the act (Rev. Code 1928, § 3227) authorizes the insertion in a receipt of "other terms and conditions" than those stipulated by the act, when not contrary to the provisions of the act or when not exempting the warehouseman from liability for his own negligence. The receipt contains this provision: "The merchandise listed on this receipt is subject to sale within 6 months from date for non-payment of charges accrued." The evident purpose of this provision, although not well expressed, was for the protection and benefit of the depositor of goods by giving him a period of six months' grace in which to pay storage, and not to give to the warehouseman a privilege already vouchsafed him by the law. The defendant has so construed such provision, for on September 25, 1925, it wrote plaintiffs stating:

"On the face of your warehouse receipt we state that, 'The merchandise listed on this receipt is subject to sale at any time six months' storage is due and unpaid.'"

The court instructed the jury that, if they believed plaintiffs were six months or more in arrears in the

payment of storage charges when the sale was made, to render a verdict for defendant, otherwise for the plaintiffs.. We think the court's construction of the contract was correct.

Under the contract, as we construe it, defendant had no right to sell the property unless at the time there was "six months' storage due and unpaid." The last six months' storage was charged on the basis of $1.50 per month, and, if the jury determined from the evidence that the plaintiffs were in arrears in any sum less than $9, the sale by defendant was premature. The defendant not only claimed a balance due it of $15.50, but submitted very substantial and convincing evidence that such sum was the true and correct balance after allowing all proper credits. The evidence tending to sustain defendant's contention as to plaintiffs' arrearages may be summarized as follows: The defendant at frequent intervals, between June 11, 1923, and December, 1927, rendered itemized statements to plaintiffs showing the items of indebtedness and the items of credit, with balance due. Plaintiffs received such statements of account and made no objection thereto (except an item of $3 for drayage), but on the contrary in their letters to defendant frequently promised to pay balance claimed by defendant. Characteristic of such promises is one in a letter dated the same day on which the property was sold (of which event they were duly notified and so admitted), as follows:

"Dear Sirs: So sorry that I can only send $5.00 at this time, but will be able to square things entirely about the middle of next month; as things are shooting a bit better for us. And I certainly wish to thank you for your long suffering kindness.
"Most truly,
"MARGARET E. RYNNING."

This was the situation until after defendant had advertised and sold the property to pay such balance.

After the sale plaintiffs for the first time denied the correctness of defendant's account as sent them. On the trial plaintiff Margaret E. Rynning testified she paid defendant's driver, at the time he took the goods from her home to defendant's warehouse, $10 and took his receipt therefor, but that she had lost the receipt. This $10 had not appeared on any statement sent by defendant to plaintiffs, and, although many had been sent, no word of complaint was ever written or uttered because of its omission as a credit. On January 7, 1924, plaintiff Margaret E. Rynning mailed to defendant a check for $10, to be applied on plaintiffs' account. Defendant acknowledged such check and duly credited plaintiffs therewith on January 9 as follows: $2.25 for drayage and $7.75 for storage. This was not questioned until upon the trial when Mrs. Rynning testified that she had mailed to defendant a postal money order for $7.75 on or about January 9, 1924. The receipt for this sum had also been lost, she testified. Thus she claimed at the trial that she had paid defendant, on or about January 9, 1924, $17.75, instead of $10, for which she had been duly credited.

Under the rules of this court the facts when in dispute are tried by the jury, and we do not know who the jury believed as to these disputed items. But, were it our province to weigh this testimony, we would hesitate quite a while before giving credence to these belated stories of uncredited payments. However, even though the jury was convinced that the arrearages were as much as defendant claimed, still under the following instruction, of which complaint is made, it was bound to return a verdict for plaintiffs:

"If you believe from a preponderance of the evidence that defendant sold more of said goods than was necessary to pay its storage charges, then such

act amounted to a conversion of plaintiffs' property for which they were entitled to damages."

The fact is the defendant sold more goods than was necessary to pay storage and other charges, granting there was due it all that it claimed. It sold all of plaintiffs' property and realized some eighty dollars more than its claim. If the facts justified a sale at all, we think under the law defendant was justified in selling all of the property. Section 28 of the Uniform Warehouse Receipt Act (Rev. Code 1928, § 3248) gives the warehouseman a lien "against all goods, whenever deposited," with certain exceptions immaterial here, and section 33 (Rev. Code 1928, § 3252) thereof authorizes "a sale of the goods by auction . . . to satisfy any valid claim . . . for which he has a lien on the goods." This, we take it, expressly authorizes a sale of all the goods by the warehouseman and from the proceeds thereof the payment of his lien, including the reasonable charges of notice, advertisement, and sale; and the balance, if any, he is required to deliver to the rightful claimant or owner of goods. This instruction cannot be said to be harmless, for it bound the jury to return a verdict for plaintiffs if more property was sold than necessary to cover arrearages, even though they believed plaintiffs owed defendant at the time of sale more than six months' storage charges.

There is another rather perplexing question that we feel should be disposed of at this time. It is present in the record, and upon a new trial will certainly arise again. The question is the right of defendant to limit its responsibility "for the contents of any one piece or package . . . to the sum of $50.00 unless the value thereof is made known at the time of storage and receipted for, and an additional charge made for the higher valuation." This condition is inserted in the warehouse receipt, as a reference thereto will show. The relation of warehouseman and depositor

is contractual in its nature. Their duties and obligations are reciprocal and depend upon their agreement, and, generally speaking, the parties are at liberty to insert in their contract any terms and conditions not forbidden by law or contrary to public policy. In effect, the Uniform Warehouse Receipt Act so provides. Under such act the warehouseman is bound "to exercise that degree of care in the safekeeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own" (section 3 [Rev. Code 1928, § 3227]); and he cannot contract against such care. Any provision of the contract that would attempt to relieve him from that degree of care is void. Neither may he insert in the contract any other terms or conditions contrary to the letter or spirit of the act. He is not liable for any loss of or injury to the goods which could not have been avoided by the exercise of that degree of care which a reasonably careful man would have exercised under similar circumstances (section 21 [Rev. Code 1928, § 3244]), nor for "loss" (quoting from the contract) "as result of proper sale by legal process for nonpayment of charges."

According to their contentions the plaintiffs have not lost their goods through negligence of the defendant or as the result of a proper sale. If they are right in their contention that they had paid all charges and owed defendant nothing at the time the property was sold, they have lost their goods by an unlawful conversion and sale thereof by defendant. Whatever the rule may be as to the right of the warehouseman to limit his responsibility to a named sum inserted in the warehouse receipt, in case the property is lost or injured by reason of his failure to exercise the standard of care fixed by the law, we feel certain he cannot so limit his responsibility where he himself converts the property to his own use. If such a limitation of liability for his own tort

were sanctioned, a warehouseman could well afford to speculate on his depositor's goods by selling them at their true value and then settle with the depositor on the basis of the limited value. A rule that would offer such opportunity or inducement to the warehouseman should not, for reasons of public policy, be declared or enforced. Moreover, when it is considered that the warehouseman's contract obligates him to safely keep the deposited goods and to protect them from the torts and trespasses of others, we think the provision in the contract for limited responsibility was never intended to cover loss or injury occasioned by the warehouseman's torts and trespasses. Whether, under the Uniform Warehouse Receipt Act, a warehouseman may limit his responsibility to less than the full value of the deposited goods, when lost or injured through a failure on his part to exercise proper care, is not involved in this case, and the instructions given by the court predicated on the assumption that such question is involved were erroneous.

The defendant asserts that the verdict is excessive and appears to have been given under the influence of passion and prejudice. This claim is predicated on the fact that the verdict corresponds exactly in amount with the aggregate value of articles sued for, as itemized in the plaintiffs' complaint, and the further fact that the proof of values was made by the testimony of Margaret E. Rynning, corroborated as to a limited number of items by the testimony of Thos. H. Rynning. Granting as true what is said as to the identity of amount claimed and amount recovered, and the sources of proof of damages, we would not be justified in concluding therefrom that the verdict was given under the influence of passion and prejudice or that it was excessive. We are cited to no authorities to sustain this contention, and we doubt if there are any.

Finally, it is said the court erred in permitting Margaret E. Rynning to testify as to values of goods, over repeated objections from defendant. Counsel do not cite us to the place in the transcript of the testimony where they objected to this witness testifying to values. It is said her estimates of values in most instances were obviously based upon sentiment without regard to monetary value. Probably that is true, but the court properly instructed the jury as to the true measure of damages, and there is no objection to such instructions.

The judgment of the lower court will be reversed and the cause remanded, with directions that a new trial be granted in accordance with this opinion.

LOCKWOOD, C. J., and McALISTER, J., concur.