## PAGE v. ALLISON.

No. 24362. June 11, 1935.

Rehearing Denied July 16, 1935.

Smith & Staley, for plaintiff in error.

Jno. L. Ward and Oran N. McCain, for defendant in error.

PER CURIAM. T. J. Allison, the defendant in error, we will refer to herein as plaintiff, and will refer to the plaintiff in error, R. W. Page, as defendant.

Up until about October 1, 1929, and for at least a short time prior thereto, plaintiff was residing at 209 South College street in Tulsa, but planned to leave October 1st to be gone several months at least. He had his household goods packed and engaged the services of his brother to attend to the storing of same with the defendant as Page Fire Proof Storage, said defendant conducting a warehouse for storage purposes in the city of Tulsa. The goods were delivered on October 1, 1929, to the defendant and were listed as follows: Victrola, sewing machine, chest, box, trunk, two small chairs; only the six items being listed. The receipt was signed in the name of the plaintiff by his brother. Among other provisions of said receipt so signed by the plaintiff is the following:

"In consideration of the rate charged, it is agreed that the liability of the company for any one piece or package listed hereon with contents thereof shall be to the sum of $10 for loss or damage, unless the just

and true value is greater and noted hereon and an additional charge made for the excess valuation."

The receipt further contained provisions that the owner should keep the warehouseman advised of his correct address and to promptly notify the warehouseman of any change of address.

The brother testified that when he delivered the goods to the defendant he was asked as to the address, and that he, the brother, gave the defendant the address as Route No. 7, Box 106, and that he told the defendant to send any mail for the plaintiff to such address, which was the brother's address. Thereafter the plaintiff was located at many places for short periods of time following his occupation as an oil field worker.

The plaintiff was in Tulsa on June 3, 1930, at which time he testifies that he went to the office of the defendant to pay up his storage, and on that date at that office wrote a check for the storage then due, amounting to $7.50. The check, as introduced in evidence, bears on the lower corner thereof the following, "1302 South Florence." Plaintiff testified that there was a discussion with the bookkeeper of defendant as to the plaintiff's address at the time said check was delivered, and that plaintiff notified said bookkeeper that plaintiff's proper address was then 1302 South Florence street in the city of Tulsa, and that the bookkeeper made some notation on his papers of this address. Such conversation was denied, however, by the bookkeeper. Apparently this check paid up all storage charges until July 1, 1930. Plaintiff further testified that he received a statement in September at such address from the Page Storage Company for storage due, which called his attention to the fact that the storage for July and August was unpaid. Plaintiff apparently paid no attention to this statement received in September and in the latter part of January, 1931, he appears to have been located at 3207½ South Robinson street, Oklahoma City.

With no payments having been made subsequent to the payment on June 3d, the defendant, on January 2, 1931, following, sent the plaintiff a registered letter addressed Route No. 7, Box 106, Tulsa, Okla., which was returned undelivered, said letter containing notice to the plaintiff that no storage had been paid since July 1, 1930, and that the company claimed a lien upon the six pieces of household goods, and de-

manding payment on or before the 19th day of January, 1931, otherwise, the defendant would advertise and sell the goods on the 9th day of February, 1931. On January 24, 1931, publication of notice of sale was made in the Tulsa Daily World, in which it was stated that sale would be made to satisfy the lien for storage, and in which notice the name of T. J. Allison, plaintiff, was given and the property was advertised as Victrola, trunk, and household goods.

On January 29, 1931, the plaintiff wrote from his Oklahoma City address to defendant stating: "Please send a statement of my account. Prompt payment will follow." The defendant did, on the next day, January 30, 1931, send to plaintiff at Oklahoma City a statement showing $17.50 due, being for seven months from July 1, 1930, to February 1, 1931, but did not mention anything about the proposed sale, merely giving to plaintiff the information requested in plaintiff's letter.

Hearing nothing further from plaintiff, defendant proceeded with the sale on February 9th, when all of the property was sold at public sale by an auctioneer, bringing a total of about $64. The plaintiff went to Tulsa sometime in March following and learned of said sale, at which time he called upon the defendant and tried to learn to whom the property was sold, but this information could not be ascertained. Thereafter the plaintiff brought this suit against the defendant for conversion of the property, claiming the value was $999.30, also seeking $1,000 exemplary damages and a small amount as expenses.

The defendant answered by general denial and set forth that the property was received by the defendant, who issued the receipt or contract mentioned above, and that six or seven months' storage remaining unpaid, the property was sold as set forth above to satisfy the warehouseman's lien, and tendered the plaintiff $41, the difference between the sale price and the storage, with expense of sale. The case came on for trial before the court, a jury being waived, the court rendering judgment for plaintiff in the sum of $344.50 for conversion of the property, from which the defendant appeals.

The first question presented is whether the warehouseman gave proper notice to the plaintiff, as provided by statute, to pay the charges or a sale would be had to satisfy the lien. Plaintiff testified that he personally gave the bookkeeper of the warehouseman notice on June 3, 1930, of the

change of address of the plaintiff, and also wrote the same on the bottom of the check which plaintiff then gave defendant in payment of the charges. The general finding of the court in favor of the plaintiff found this contention of the plaintiff to be true. This being a law action, the well-settled rule applies that where the case is tried before a jury or before the court, a jury being waived, this court will not disturb a finding of a fact where the same is supported by reasonable evidence. The court had the right to believe this evidence of the plaintiff and its finding is therefore so supported. The receipt, while requiring notice of change of address, did not specify the kind of notice or manner of giving same, and therefore the verbal notice given by plaintiff on June 3, 1930, was sufficient.

It is conceded by all parties that no notice was sent to the plaintiff at the address given on June 3, 1930, nor is it claimed that he had any notice otherwise. Notice under section 12974, O. S. 1931, is a condition precedent to a sale by the warehouseman. No notice having been given to the plaintiff, the sale was unauthorized.

As to the evidence of values of the numerous items of property which plaintiff alleged in his pleadings were converted, there was some evidence introduced by the plaintiff as to the value of all, or substantially all, of the items thereof. The evidence shows values of the items converted aggregating more than the amount as found by the court, so we hold that the findings of the court as to the values are reasonably supported.

The important question remaining in the case is whether or not this limitation of value in the warehouse receipt is controlling. The defendant did not plead this limitation as a special defense. Apparently this should have been done; however, the attorneys have not made any point of this nor briefed this question, but have presented the matter to this court the same as if the question of said limitation were properly presented. We therefore pass to the decision of that question. We hold that said limitation clause under the facts of this case is inapplicable. The sale by the warehouseman being entirely without authority, the same amounted to a conversion of the property by the warehouseman. Billings v. Porterfield, 81 Okla. 218, 198 P. 94; 67 C. J., pg. 537, sec. 171.

In 67 C. J. at the page cited it is said:

"As a general rule a sale, pledge, or other wrongful disposition by a warehouseman, in violation of his contract, of property bailed, renders him liable for conversion and for resultant loss, which may be recovered in an appropriate action."

We do not pass upon the question of whether or not such a limitation could be legally made to apply in other instances, but we do hold that regardless of that question, such a limitation would not be applicable where the warehouseman, as in the case before us, is himself guilty of conversion of the property. The whole spirit and intent of the statutes relating to warehousemen and the spirit and intent of the relation between the warehouseman and the depositor of the goods is that the warehouseman shall safely keep the goods and return same to the depositor when requested. As such warehouseman is required to safely keep the goods so as to prevent the taking away thereof by others, it is certainly not within the contemplation of the parties or of the law that the warehouseman could convert same himself.

Although by section 12944, O. S. 1931, the warehouseman is authorized to insert certain terms and conditions in the receipt issued by him, he cannot insert any which would "in any wise impair his obligation to exercise that degree of care in the safe keeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own." The situation of the parties and the attendant circumstances should be considered in the solution of this matter. The goods are entrusted to the care and custody of the warehouseman; he may leisurely and privately examine them to ascertain their value; if he decides to convert them, that is a matter of his own volition, over which the owner would have no control, as it doubtless would be an event which the owner would not even suspect. Such a provision in the contract would be a temptation to the warehouseman to convert any of the goods which were undervalued and thus an inducement to violate his duty to safely keep the goods; in such circumstances, he could profit by his own wrong —the violation of his duty. It is contrary to the policy of the law that any one shall ever so profit. Under the statute no provision can be inserted in the contract which would impair the obligation or duty of the warehouseman to safely keep the goods; from a practical standpoint this obligation or duty would be materially impaired if there is inserted in the contract a provision

whereby he may profit by violating his obligation or duty. There would not only be removed the response in damages as a restraining influence to prevent a violation of the duty, but this would be supplanted by the opportunity for a positive gain as a reward for such violation. Furthermore, it would open wide the doors for frauds and injustices to be practiced by the warehouseman, if, after such limitations are inserted in the contract, the warehouseman could examine the property, the value of which might fluctuate appreciably, and take such portions thereof and appropriate same to his own use which were undervalued and settle with the depositor thereof at such agreed value. It is contrary to the spirit and intent of his relations that he could so speculate thereon. Arizona Storage & Distributing Co. v. Rynning et al. (Ariz.) 293 P. 16.

Defendant in error asks for judgment against the sureties on the supersedeas bond, and it is ordered that judgment is so rendered herein against them. Judgment affirmed.

The Supreme Court acknowledges the aid of Attorneys Calvin Jones, Chas. E. McPherren, and Hubert Ambrister in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Jones and approved by Mr. McPherren and Mr. Ambrister the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.