Emily Hoiden, Appellee, v. Joseph Kohout and Mary Kohout, his wife, Appellants. John O. Sykora, Trustee, Defendant.

Gen. No. 46,852.

First District, Second Division.

November 27, 1956.

Released for publication January 8, 1957.

Theodore P. Nebel, and Owens, Owens & Rinn, all of Chicago, for appellants.

Gorski, Hassell, Daly & Sinden, for appellee.

JUDGE SCHWARTZ delivered the opinion of the court.

This is an appeal from a decree foreclosing a trust deed securing a note for $5000 made by Joseph and Mary Kohout (defendants-appellants, herein called defendants). Their defense is that all interest and principal had been paid to John O. Sykora as the authorized agent of plaintiff to receive payment, although the notes were not surrendered to them. They filed a counterclaim seeking to have the notes cancelled. The issue in this cause is the scope of the agent's authority.

John O. Sykora was named trustee, and both principal and interest were payable at his office or at such other place as the holder of the notes might from time to time in writing appoint. Provision was also made for prepayment on the principal sum upon giving the owner of the notes or the *trustee* thirty days written notice. The cause was referred to a master who heard the evidence, found that the payments were not made to Sykora as plaintiff's agent and recommended a foreclosure decree and dismissal of the counterclaim. The chancellor overruled exceptions to the master's report and entered a decree as recommended.

The case turns on the legal effect of the uncontroverted testimony describing the character of Sykora's

162

agency for plaintiff. It appears that over a period of fifteen years plaintiff purchased ten to fifteen mortgages through Sykora. She had no personal contact with the borrowers. Sykora would collect payments without having notes in his possession and would write plaintiff or advise her orally that payments had been made, whereupon she would send him the notes. Sykora would keep the payments he received and would give plaintiff his personal checks for whatever had been paid. This was true both as to principal and interest payments. From time to time plaintiff permitted funds to remain with Sykora for the purpose of purchasing other mortgages. Plaintiff estimates that she had a revolving fund with him of between $15,000 and $20,000. In February 1947 when she had a credit of approximately $2500 in the account, she gave Sykora a check for $2486 to be added to her balance and in May 1947 the money was used to purchase the Kohout mortgage. Plaintiff received the trust deed and notes in June 1947.

Defendants first met Sykora in May 1947 when they sought a loan for the purpose of buying a house. There was no contact between plaintiff and defendants until after August 1952 and no written communication between them until November 1952. From 1947 to 1952, defendants made their payments of interest and principal to Sykora and took his receipts therefor. When they made payments of interest, Sykora's secretary informed them that she did not have the coupons and that when they came in from the holder, Sykora would send them to defendants. By July 1952 they had paid $3000 on account of principal and on July 7, 1952, they made a final payment on principal of $2000. Shortly after this Sykora absconded. Defendants did not ask for the production of either interest coupons or the principal note upon which payment was being made nor did they inquire whether Sykora owned the

notes or had them in his possession. Sykora did not advise plaintiff of the prepayments of principal nor did he transmit any portion thereof to her.

The practice of holders of bearer notes remaining unknown to borrowers is by no means uncommon in this community. It means, however, that the note holder must create an agency. In this case, as in many others, the mortgage dealer and trustee was the agent. The inevitable conclusion from the uncontroverted testimony is that plaintiff knew and approved of Sykora's receiving payments of principal and interest from borrowers and depositing them to his own account or keeping the money and accounting to her later. She also knew that prepayments on principal were being made by borrowers without production of principal notes. This she had known for years. She not only acquiesced but cooperated in the arrange-- ment. She never sent notes to Sykora in anticipation of payment but would only deliver them to him when he advised her that payment had been made. Apparently this was not due to any caution on her part with respect to Sykora because, as we have said, she would often leave funds with him pending the purchase of other mortgages which he might obtain for her. It was her mode of doing business with him. Her own testimony is that times were good and people were paying off loans so fast it was an annoyance to her. That was her reason for leaving money with Sykora pending his ability to get other mortgages.

██ It is argued that defendants by their conduct permitted Sykora to commit the embezzlement. Payment to a duly authorized agent is payment to the principal. In such a case any argument with respect to defendants' exercise of care or failure to inquire is irrelevant. The same thing may be said of the argument that defendants cannot rely upon plaintiff's

course of dealing with others through Sykora, as they knew nothing about it. The evidence of other dealings was proof of plaintiff's acquiescence and affirmative cooperation in Sykora's method of collecting interest and principal payments on her behalf. It is of no consequence that defendants did not know the course of dealing by which Sykora thus became empowered as plaintiff's agent. Their own course of dealing followed the same pattern as that of others. This is to be distinguished from a case of persons dealing with one who is not an agent but assumes to be such or, being an agent, exceeds his authority. In such a case the facts creating an estoppel should be known to the persons dealing with the agent. In the instant case the agency was proved. The defendants' obligation was discharged when they paid Sykora the money they owed plaintiff.

This conclusion is fortified by the fact that where the owner of a bearer note secured by a trust deed conceals his identity, the trustee appointed for the purpose of securing performance of the provisions of the trust deed starts with an authority from the owner which, while limited in the first instance to seeing that the covenants of the trust deed are performed, is easily expanded to a personal authority to receive payment on behalf of the owner of the notes. The trust deed in itself made this easy by providing that payments should be made at Sykora's office. Perhaps such an arrangement in its primitive sense meant that at the appointed time and place the maker of a note would meet the holder of the note and there make his payment. It does not mean that today when a great many loans provide for payments on installments or prepayments at a time and place fixed in the instrument. In such cases the debtor frequently does not see his note until after the final payment.

165

■ Three cases are cited which adequately support our conclusion. Noble v. Nugent, 89 Ill. 522; Linowiecki v. Wisniewski, 249 Ill. App. 474; and Corn Belt Building & Loan Assn. v. Grabe, 295 Ill. App. 135. In the Noble case the vital facts are similar to those in the case at bar. The borrower dealt with the mortgage broker, also named as trustee, and never met the note holder or knew his name. She made payments from time to time, taking the broker's receipts, and when she made final payment she asked for the note but was told the broker was busy. The mortgage broker, as trustee, gave her a release of the trust deed. It appeared that the broker had acted for the lender for more than ten years and had authority to collect moneys owing the lender. The court said the fact that the notes were not surrendered when paid could not avail as aganist clear proof that they were paid to a person having authority to receive payment, citing Anderson v. Coonley, 21 Wendell 279; United States Life Insurance Co. v. Advance Co., 80 Ill. 549; Harris v. Simmerman, 81 Ill. 413. The court makes the further observation that the authority of an agent may be shown by the usual acts of such agent in the principal's business or by the principal's permitting and acquiescing in such acts when known to him, as well as by express authority and direction, quoting from Doan v. Duncan, 17 Ill. 272, at 275:

"The policy and reason of the rule is for the protection of the innocent, who deal upon the faith of such authority as the principal holds out or permits as being authorized and sanctioned by him. If an innocent party is to suffer, it shall fall upon him who enables the supposed agent, under his authority, to impose on others."

The principle is stated in this way in Restatement of the Law, Agency, ch. 3, sec. 43(2):

166

"Acquiescence by the principal in a series of acts by the agent indicates authorization to perform similar acts in the future."

To the same effect are the other cases cited. In Linowiecki v. Wisniewski, supra, this pertinent language appears:

"Moreover, the plaintiff by his course of conduct, had agreed to the payment of the notes, without their production, at the office of Weber & Weber by the defendants, as it appears from his own testimony that he would not deliver the notes until he had first received the money and, for that reason apparently, would not deposit them with that firm."

In Corn Belt Building & Loan Assn. v. Grabe, supra, the court said, p. 140:

"From a careful consideration of all the evidence in the record we find it to clearly appear from the manifest weight of the evidence and the law applicable thereto that James O'Mara & Son, Lawrence O'Mara, were at the time of the execution of the Grabe mortgage, purchased by Collins, acting as the general agents for Collins in making, collecting and releasing mortgage loans generally for him, and that for a long period of years had been so collecting interest, receiving the principal of loans, and releasing mortgages for Collins, and that in making the Grabe loan, collecting interest, receiving payments thereof, and in releasing the mortgage, were so acting as the agents of Collins, the undisclosed principal upon whom such acts were binding. Consequently Collins, through his course of conduct, is now estopped from questioning such agency. Voelkner v. Ott, 197 Ill. App. 520; Linowiecki v. Wisniewski, 249 Ill. App. 474."

Plaintiff makes the point that the inference of authority to receive payment arises from possession of a trust deed and notes by the person to whom pay-

ment is made and does not exist without such possession. She cites Kennell v. Herbert, 342 Ill. 464. In that case the court said that a trustee as such is limited by the provisions of the trust deed which indicate clearly that he holds it for the use of another, and where a trust deed and note is owned by a third party, the trustee has no implied authority to receive payment of the note, and if payment is made to him and he executes a release, the release has no effect upon the rights of the owner and holder of the trust deed to foreclose. The trust deed contained no provision for prepayment and the facts involved an isolated transaction which did not disclose any course of dealings between the holder of the note and the trustee's office. So far as appears, there was no dealing between the holder of the note and the trustee, so that whatever payment was made to the trustee was not made on the basis of his being an agent of the note holder, as in the instant case, but in his capacity as trustee.

In Bergstrom v. Colleran, 360 Ill. 377, cited by plaintiff, the note had been negotiated before maturity in a bona fide transaction and the mortgagors continued to deal with the original holder of the note after he had negotiated the same. No question of agency was involved.

In Fortune v. Stockton, 182 Ill. 454, cited by plaintiff, a mortgagor desiring to make payment before maturity dealt with the attorney for the holder of the notes. The mortgagor's lawyer questioned the attorney's authority and finally accepting his assurance, made payment to him. It developed that he had no such authority. The court there was dealing with notes made payable to specific payees without provision for prepayment prior to maturity. Other facts in that case clearly distinguish it from the instant case.

168

■ Plaintiff makes the point that no notice was given with respect to the making of prepayments as required by the trust deed. Under the trust deed thirty days notice was required to be given to either the holder of the note or the trustee with respect to making prepayments. It is contended that this notice was not given to plaintiff. However, payment was made to the trustee. By plaintiff's own testimony, payments by borrowers were frequently made to Sykora in advance and were accepted by her. The trustee had the right to and did waive notice by accepting the prepayments.

In our opinion the uncontroverted evidence has established the fact of Sykora's agency for plaintiff. The complaint to foreclose is without equity, and the prayer of the counterclaim should be allowed.

The decree is reversed and the cause is remanded with directions to enter an appropriate order in accordance with the views herein expressed.

Decree reversed and cause remanded with directions.

ROBSON, P. J. and McCORMICK, J., concur.