Katharine Trueblood, Plaintiff-Appellee, v. Wilson D. Trueblood and Charles A. Bunnell, Defendants-Appellants.

Gen. No. 46,973.

First District, Second Division.

February 19, 1957.

Released for publication April 2, 1957.

Singer & Singer, of Highland Park, for defendant-appellant, Charles A. Bunnell.

Becher W. Hungerford, of Chicago, for appellee, Katharine Trueblood.

JUDGE SCHWARTZ delivered the opinion of the court.

Plaintiff obtained a judgment by confession on a promissory note payable to her and executed by Wilson Trueblood, her husband, and Charles A. Bunnell, as comakers. A motion to vacate was sustained, the judgment was opened and a jury was impanelled to hear the issues. At the close of all the evidence the court directed a verdict for plaintiff and confirmed the judgment. From this only Bunnell has appealed. His defense to the note is that Wilson Trueblood, as the agent of his wife, released him from his obligation under the note upon his agreeing to execute a bill of sale of their partnership business to a third person, and he asserts that this defense was sufficiently established by the evidence on his behalf to make an issue for the jury.

█ Plaintiff in her brief states the rule which should have guided the court in determining whether

to take the case from the jury, as follows: A motion to direct a verdict presents only a question of law as to whether, when all the evidence is considered and all reasonable inferences are drawn most favorable to the party against whom the motion is directed, there is a total failure or lack of evidence to prove one or more necessary elements of the case. This is a correct statement of the law. It is in the light of this principle that we state the facts which the trial court should have considered in making its ruling.

 Bunnell and Wilson Trueblood entered into an oral partnership agreement to purchase and operate a bakery in Algonquin, Illinois, early in January 1949. In April 1950 Katharine Trueblood loaned $3,800 to the business, taking a chattel mortgage on what appears to have been most of the operating equipment of the bakery. While the chattel mortgage refers to an indebtedness owing by the mortgagors, no note evidencing this indebtedness was executed until two months later, when Wilson Trueblood and Bunnell executed a promissory note for $3,800, being the note in question. At that time, according to Bunnell's testimony, Wilson Trueblood said his attorney had told him that he should get this note "to protect him on the chattel mortgage"; that it would not amount to anything. "It is a matter of form." To this, Bunnell replied that he would sign the note. "As long as it is against the bakery, I haven't any objection. I will be glad to sign it for you." From this, we think a reasonable inference may be drawn that Bunnell was to sign the note merely as formal evidence of the indebtedness secured by the chattel mortgage, but that the plaintiff would look only to the mortgaged property for payment.

On June 2, 1951 the bakery was sold to a third person for $5,250. The purchase price to Trueblood and Bunnell had been $15,000. There is testimony in the

record that the purchaser assumed the chattel mortgage. Bunnell testified substantially that when Wilson Trueblood told him of the purposed sale for about $5,000, Bunnell told him the price was ridiculous and thereupon Trueblood agreed to cancel the note. Upon this understanding Bunnell executed the bill of sale. He received nothing from the proceeds of the sale, nor does he know whether the money was used to make a settlement with creditors of the business. The only remaining question, therefore, is whether there is evidence upon which the case could go to the jury on the agency of Wilson Trueblood to release the obligation of Bunnell and himself to his wife.

 Only two witnesses appeared—Katharine Trueblood and Charles Bunnell. Mrs. Trueblood's testimony, with the reasonable inferences to be drawn therefrom, reveals that she considered the money paid pursuant to the note to be in the nature of an advance to her husband; that she was letting him use the money; that he handled all her affairs and made all her investments for her, and that she knew little or nothing of these business transactions. She did not know who prepared the note or the chattel mortgage. We are of the opinion that this evidence, with all the favorable inferences that may be drawn in defendant's favor, taking the defense as a whole, was sufficient to reveal authority in Wilson Trueblood as his wife's agent to procure Bunnell's agreement to sign the bill of sale upon their releasing him from his obligation under the note.

 Gorin v. Wiley, 215 Ill. App. 541, supports the view that a parol agreement made and performed as in the instant case is adequate basis for the release of an obligor on a promissory note. In that case the plaintiff, as the administrator of one Krone, sued upon a promissory note given by the defendant to Krone. The defendant pleaded that during Krone's lifetime a

three-sided contract was made whereby the defendant sold and delivered certain property to a third person, one Peers, in consideration for the oral promise of Peers, made to the defendant and Krone, to pay the obligation of defendant on the notes. A demurrer to this plea was overruled and judgment was entered in favor of the defendant. The court held that the plea was good.

Plaintiff argues that an agency to make a loan or investment does not by implication carry any authority to cancel or release the obligation. In the instant case, as we have said, the evidence favorable to defendant, with the reasonable inferences which may be drawn therefrom, reveals that the husband was his wife's agent not only with respect to making a loan or investment but with respect to all matters concerning the investment.

The cases which plaintiff cites do not appear to be relevant. In Ingersoll v. Banister, 41 Ill. 388, the plaintiff by one Weaver as his agent sold the defendant some goods. Subsequently the defendant and Weaver became partners. The partnership was dissolved and the defendant, as a defense to the plaintiff's complaint, claimed that he had an arrangement with Weaver whereby Weaver was to assume the debt to the plaintiff. The court there held that Weaver and the defendant could not make an arrangement for the discharge of the debt owing to the plaintiff without the plaintiff's knowledge, consent, or ratification. Weaver's authority as agent for the plaintiff was limited to the sale of grain. The gist of the decision in that case was the fact that Weaver exceeded his limited authority without the plaintiff's knowledge or ratification.

Garrels v. Morton, 26 Ill. App. 433, cited by plaintiff, turned on the question of custody of securities. The court held that there was no direct proof of agency except by the agent himself that he had authority to

receive the payment of principal. In the instant case proof of authority is to be found in plaintiff's own testimony with respect to the general power and trust she reposed in her husband in connection with the business in question. This court recently held in Hoiden v. Kohout, 12 Ill.App.2d 161, 138 N.E.2d 852, that it is not essential to the establishment of authority to collect that the agent should have the security in his possession.

In Gannon v. Bronston, 246 Ky. 612, 55 S.W.2d 358 (1932) three partners executed a note to a creditor. The creditor brought suit on the note against Bronston, one of the partners. Bronston defended on the ground that Gannon had released him from liability on the note on his promise to quit the partnership, apparently in the creditors' expectation that this would compose disputes among the partners. However, after Bronston had quit the partnership it continued to suffer financial reverses and the two remaining partners were discharged in bankruptcy. After the discharge Gannon sued Bronston, alleging that his release was invalid for want of consideration and because the note was not surrendered nor was there any written evidence of a release. The question was discussed thoroughly from the point of view of release, renunciation and estoppel, and the court held that these defenses were still applicable under the circumstances there existing to a suit on a note.

The judgment is reversed and the cause is remanded with directions to take such further proceedings as are consistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

ROBSON, P. J. and McCORMICK, J., concur.