476 P.2d 883

Douglas S. HOLSCLAW and Alice Y. Holsclaw, husband and wife, and Lena H. Johansen, a widow, Appellants,

v.

CATALINA SAVINGS & LOAN ASSOCIATION, a corporation, and Malcolm Hillock and Beverly C. Hillock, husband and wife, Appellees.

No. 2 CA–CIV 714.

Court of Appeals of Arizona, Division 2.

Nov. 30, 1970.

Rehearing Denied Jan. 6, 1971.

Review Denied Feb. 16, 1971.

Tannenbaum & Tannenbaum by Arthur A. Tannenbaum, Tucson, for appellants Holsclaw.

Lawrence E. Holladay, Tucson, for appellant Johansen.

Estes, Browning & Zlaket by Donald Estes, Odin B. Dodd, Tucson, for appellee Catalina Savings & Loan Assn.

Molloy, Jones, Hannah, Trachta & Coolidge by J. Richard Hannah, Tucson, for appellees Hillock.

EUBANK, Presiding Judge.

The principal question placed before us in this litigation is whether a recipient of funds paid to satisfy a mortgage was the collection agent of the holders of the mort-

gage. The trial court held that the agency relationship was established, and that the mortgage debt was discharged. We affirm the holding.

The trial court made comprehensive findings of fact, and appellants have not seen fit to challenge any particular finding. We are bound by the findings, unless clear error is apparent.

On October 14, 1959, people named Bartley, then owners of the land in question, executed a $25,000 note payable to Frannea Realty & Trust Co., hereinafter referred to as "the Frannea Co." Payment of the note was secured by a mortgage, which will hereinafter be referred to as the "Bartley mortgage." By the terms of the note, principal and interest were payable at the end of six months "at the office of" the Frannea Co. The Frannea Co. was the corporate vehicle by which one Manfred Frannea dealt extensively in real estate and mortgage financing. The evidence indicates that the appellants considered Manfred Frannea and the Frannea Co. as being virtually identical.

On April 14, 1960, the Frannea Co. extended the due date of the note to August 14, 1960. By instrument dated April 25, 1960, the Frannea Co. assigned the note and mortgage to the appellants Douglas and Alice Holsclaw. On January 4, 1961, the Holsclaws reassigned to the Frannea Co. an undivided one-half interest in the note and mortgage. On January 2, 1962, the Frannea Co. reassigned this undivided one-half interest in the note and mortgage to the appellant Lena H. Johansen. The note was endorsed in conformity with each of these assignments and reassignments,[1] and each assignment and reassignment of the mortgage or interest therein was recorded in the office of the County Recorder.

It was established without dispute at the trial that the Frannea Co. retained physical possession of both the note and the mortgage following each of the transactions mentioned above. This retention was in accord with a settled course of dealing among the parties. The appellant Lena H. Johansen testified that on eight, nine, or ten previous occasions she had purchased notes and mortgages from the Frannea Co. A number of these notes and mortgages had been given to the Frannea Co. as consideration for construction loans. On each of these occasions, the Frannea Co. retained physical possession of the notes and mortgages, collected all of the proceeds, including both principal and interest, and paid the proceeds over to Mrs. Johansen by checks drawn on the account of the Frannea Co. The appellants Holsclaw had purchased approximately 25 mortgages from the Frannea Co., most of which were handled in the same manner. There were statements introduced into evidence at the trial which clearly indicated that appellants looked upon Frannea as their agent for collection of mortgages which they purchased from him.

It seems clear that appellants expected that the Bartley mortgage would be handled by the Frannea Co. in the same manner as the other transactions. Such payments as were received by appellants on the mortgage were received from the Frannea Co. on its check. None of the appellants contacted the obligors on the mortgage to advise them to make payments directly to them as assignees. Although the indebtedness became well past due, none of the appellants moved to enforce payment against the obligors either informally or by foreclosure proceedings. Such demands as were made by appellants for payment were directed to Manfred Frannea.

Frannea, in the meantime, proceeded to acquire for himself and his wife title to the land in question. It was a common practice for Frannea to acquire title to land on which his company had originally held a mortgage, and this practice was known to appellants.

1. Though not critical to this decision, the endorsements purporting to transfer an undivided one-half interest in the note could not operate as a *negotiation* of the note, see former A.R.S. § 44-432, repealed as of January 1, 1968, but did have the effect of assigning an interest in both the note and mortgage. *See* 11 Am.Jur.2d, Bills and Notes, § 320.

Frannea and his wife did acquire title to the land in question from the Bartleys' successors on July 23, 1964. At or about this time, Frannea advised the appellant Douglas Holsclaw that he was attempting to refinance the property and pay off the Bartley mortgage with a loan from a local lending institution. Frannea indicated in this conversation that he did not expect to obtain a loan large enough to pay off back interest due the Holsclaws on the Bartley mortgage, and he asked if the Holsclaws would be willing to accept a junior mortgage for such back interest, which would be subordinate to the lien of the new first mortgage, if obtainable. The Holsclaws indicated that the proposed second mortgage would be acceptable if the refinancing took place. It was ·agreed that the indebtedness to be secured by the proposed second mortgage would be in the amount of $5,400.

Frannea obtained the refinancing loan he sought from the appellee Catalina Savings & Loan Association, hereinafter called "Catalina Savings." Tuscon Title Insurance & Trust Co., (hereinafter "Tucson Title"), not a party to the present litigation, acted as escrow agent for Catalina Savings in disbursing the proceeds of the new mortgage loan. As such, it entered into an escrow agreement with the Frannea Co. to carry out the refinancing transaction. On August 5, 1964, using funds furnished to it by Catalina Savings, Tucson Title dispatched its check in an amount found by the trial court to be sufficient to satisfy the Bartley mortgage. The check bears on its reverse side a stamped negotiation by the Frannea Co. to the order of a bank "for deposit only". The Bartley note and mortgage were stamped "paid" and forwarded to Tucson Title.

The Frannea Co. did not pay the proceeds of the refinancing loan over to appellants, although several months later, in January of 1966, the Frannea Co. made a $4,000 payment to the appellants Holsclaw. Whatever, the source of this $4,000 payment, it is clear that Manfred Frannea, acting for the Frannea Co., wilfully misapplied the funds paid to the Frannea Co. by Catalina Savings through Tucson Title for the satisfaction of the Bartley mortgage.

Frannea's manipulations became known to appellants on or about March 1, 1965. The trial court found, with evidentiary support, that thereafter and all during the year 1965, appellants looked to Manfred Frannea and the Frannea Co. to make good the loss which they considered that they had sustained. Appellants did not attempt to recover the Bartley note or mortgage from Tucson Title or Catalina Savings. The appellants Holsclaw made four monthly payments on the Catalina mortgage, apparently with a view toward protecting their interests under the previously proposed $5,400 second mortgage, which the Franneas had executed in favor of the Holsclaws in October, 1964. In July of 1965, the appellees Hillock purchased title to the property from the Franneas. There is evidence indicating that the Holsclaws encouraged this transaction, and that they called to the Hillocks' attention their rights under the $5,400 mortgage.

Appellants commenced the present action in January, 1966. In their first cause of action, all of the appellants sought foreclosure of the Bartley note and mortgage. By a second cause of action, the appellants Holsclaw sought foreclosure of their $5,400 second mortgage. The appellee Catalina Savings counterclaimed for foreclosure of its mortgage, which was alleged to be in default. A single trial of all issues terminated in a decree denying appellants foreclosure of the Bartley mortgage by reason of payment to an authorized agent, and also, with respect to the appellants Holsclaw only, by reason of ratification, estoppel and laches. The decree also granted foreclosure of Catalina Savings' mortgage and the Holsclaws' second mortgage.

Many of the questions raised on appeal by appellants in their joint brief challenge the central conclusion that the Frannea Co. was their agent for collection of the Bartley mortgage. We shall deal with that basic issue first.

**366**

■ There is no question but that the burden of proving that the Frannea Co. had authority to collect the money to satisfy the Bartley mortgage rested upon the appellees, who relied upon the agency. Arizona Storage & Distributing Co. v. Rynning, 37 Ariz. 232, 236, 293 P. 16, 17 (1930).

Our Supreme Court has frequently recognized that there are two basic forms of the principal-agent relationship (actual and apparent), and that one of these two forms of the relationship may be shown to exist in four different ways: (1) an actual express agency, shown by an express oral or written delegation of power by the principal; (2) an actual agency by implication, in which an intention to create an agency is inferred from the words or conduct of the parties; (3) an agency by ratification, which would seem to be a belated recognition or manifestation of an actual agency; (4) an apparent, or ostensible agency, including an agency by estoppel, which is not an actual agency and which is often shown by negligent or inadvertent conduct of the principal which would cause a reasonable man to infer the existence of an agency relationship. *See* Land-Air, Inc. v. Parker, 103 Ariz. 1, 2, 435 P.2d 838, 840 (1968), and cases cited; Daru v. Martin, 89 Ariz. 373, 380–381, 363 P.2d 61, 66 (1961); Canyon State Canners, Inc. v. Hooks, 74 Ariz. 70, 72–73, 243 P.2d 1023, 1024–1025 (1952).

■ Although appellants in the present case argue the insufficiency of the evidence to show an apparent agency, or agency by estoppel, the appellees sought in the trial court to establish, and did establish to the satisfaction of the trial judge, an actual agency by implication. As some *indicia* of the implied agency relationship, appellees point to the fact that the note and mortgage were left in the possession of the Frannea Co., and to the additional fact that although the note was made payable "at" the office of the Frannea Co., appellants never advised the obligors that payments were to be made directly to them, or to anyone else but the Frannea Co. While possession of the debt instrument is perhaps the most important single badge of a collection agent, it is not *of itself* sufficient to establish the agency relationship, and neither is the combination of the preceding factors. Tilton v. Boland, 147 Or. 28, 31 P.2d 657, 659–660 (1934); *see also* Restatement, Second, Agency, § 71.

In the present case there are also statements by appellants tending to show recognition of the Frannea Co.'s agency role, and a divided mortgagee interest. But the critical additional factor, and the one most heavily emphasized by appellees, is the long and repeated course of dealing between all of the appellants and the Frannea Co. As much as a minimum of eight or ten times in a period of several recent years, Frannea Co. accepted payments on or in satisfaction of mortgages in behalf of each of the appellants, banked the funds, and then paid appellants from its own account. This was done without appellants' objection. In other words, appellants repeatedly acquiesced in the Frannea Co's practice of accepting and placing in its own account funds paid to discharge a mortgage held by them.

An implied agency is "* * * more readily inferable from a series of transactions." 2 Corpus Juris, § 32, p. 436, quoted in Arizona Storage & Distributing Co. v. Rynning, supra, at 37 Ariz. 237, 293 P. 16 (1930). In the same vein is the following black letter rule set forth in Restatement, Second, Agency, § 43(2):

> "Acquiescence by the principal in a series of acts by the agent indicates authorization to perform similar acts in the future."

To similar general effect, see Brutinel v. Nygren, 17 Ariz. 491, 498, 154 P. 1042, 1045 (1916). With particular reference to the authority to collect it is stated that "* * * authority to receive payment in a given case may be inferred from the principal's knowledge of and real or apparent acquiescence in a course of conduct in prior cases." Mechem, Outlines of the Law of Agency (4th Ed. 1952), § 69, p. 41.

Bearing these principles in mind, we think that it must be held that the evidence supports the trial judge's conclusion that the appellees carried their burden of proving an actual agency by implication on part of the Frannea Co. to receive payment in satisfaction of the Bartley mortgage. We have not found any identical cases, but *see* Hoiden v. Kohout, 12 Ill.App.2d 161, 138 N.E.2d 852 (1956), and *compare* Brientnall v. Peters, 317 Pa.St. 356, 176 A. 240 (1935).

Having determined this central issue, we turn to appellants' remaining contentions. It is argued at some length that Tucson Title, as agent for Catalina Savings, was negligent in paying the money over to the Frannea Co. before it received a satisfaction of mortgage signed by the appellants, and that such negligence was the proximate cause of the loss suffered. The point is also made that Tucson Title had no knowledge of the course of dealing between appellants and the Frannea Co., and that its principal Catalina Savings should not be permitted to rely upon the unknown relationship. However pertinent these arguments might be in a case where the payor seeks to establish an apparent agency, or agency by estoppel, they are without effect when an actual agency by implication is established. We quote from Hoiden v. Kohout, supra, at 138 N.E.2d 854:

"[1, 2] * * * Payment to a duly authorized agent is payment to the principal. In such a case any argument with respect to defendants' exercise of care or failure to inquire is irrelevant. The same thing may be said of the argument that defendants cannot rely upon plaintiff's course of dealing with others through Sykora, as they knew nothing about it. The evidence of other dealings was proof of plaintiff's acquiescence and affirmative cooperation in Sykora's method of collecting interest and principal payments on her behalf. It is of no consequence that defendants did not know the course of dealing by which Sykora thus became empowered as plaintiff's agent. * * * This is to be distinguished from a case of persons dealing with one who is not an agent but assumes to be such or, being an agent, exceeds his authority. In such a case the facts creating an estoppel should be known to the persons dealing with the agent. In the instant case the agency was proved. The defendants' obligation was discharged when they paid Sykora the money they owed plaintiff."

Appellants next suggest that inasmuch as the original relationship of the Frannea Co. to them was vendor and vendee, there could be no subsequent agency relationship. No authority is cited for the proposition that the former relationship necessarily precludes the latter, *cf.* Henningsen v. Title & Trust Co., 151 Or. 318, 49 P.2d 458 (1935), and we will not engraft such an unreasonable restriction onto the law of agency.

It is argued that Frannea had a conflict of interest in that he and his wife were the owners of the property at the time of the tender, and that this conflict of interest prevented any agency on the part of the Frannea Co. *vis-a-vis* appellants. This argument is also advanced without citation of supporting authority. Frannea's practice of acquiring title to land on which the Frannea Co. originally held a mortgage was known to appellants. Assuming honesty of purpose, as the law must in evaluating legal relationships, we find no inherent conflict of interest on the part of an owner and collection agent to a mortgagee-principal.

Appellants make an argument to the effect that the loss caused by Frannea's misapplication of funds should fall on Catalina Savings for the asserted reason that by virtue of the escrow agreement between Tucson Title and the Frannea Co., the latter was the former's agent (and Catalina Savings' sub-agent) for obtaining a satisfaction of the mortgage prior to disbursal of the funds. This argument flies in the face of the basic fact that the Frannea Co. was a party to the escrow agreement only

by virtue of its preexisting relationship to appellants. It is clear that Tucson Title was Catalina Savings' only authorized agent in the transaction.

■ It is also contended that there was no evidence that the funds were actually received by the Frannea Co. Apart from the apparently regular form of the check issued by Tucson Title and its endorsement by the Frannea Co., two of the appellants testified that Frannea had told them that he had received the funds and improperly disposed of them.

■ Finally, the appellants Holsclaw contend that Catalina Savings is not entitled to foreclosure of its mortgage. No exception is taken to the trial court's finding No. 54, that the note and mortgage became delinquent on September 5, 1965, at which time the due date of the entire principal was accelerated. The Holsclaws' contention is based upon the fact that subsequent to filing its counterclaim for foreclosure, Catalina Savings assigned its interest in the note and mortgage to Stewart Title & Trust Co., at which time Catalina Savings' ledger card was for some reason marked "paid in full". At the trial, an officer of Catalina Savings explained that the designation "paid in full" was erroneous, and that the mortgage was delinquent at the time it was transferred to Stewart Title & Trust Co. There was no testimony to the contrary, and neither was there any testimony that the delinquent status of the mortgage had been cured subsequent to the transfer. Rule 25(d) of the Rules of Civil Procedure, 16 A.R.S. provides that in the absence of a motion for substitution of the transferee, an action may be continued by the original party, notwithstanding the transfer of his interest. There was no motion for substitution in this case, and Catalina Savings may properly be awarded a judgment of foreclosure

Judgment affirmed.

HAIRE and JACOBSON, JJ., concur.