492 P.2d 718

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Appellant and Cross-Appellee,

v.

Ellawese LONG, aka Ellawese Easter, et al., Appellees and Cross-Appellants.

Nos. I CA–CIV 1562, I CA–CIV 1661.

Court of Appeals of Arizona,
Division 1,
Department B.
Jan. 19, 1972.
Rehearing Denied Feb. 28, 1972.
Review Denied June 8, 1972.

Kenneth S. Scoville and Leroy W. Hofmann, Phoenix, for appellant and cross-appellee.

Renaud, Cook, Miller & Cordova, P. A., by J. Gordon Cook, Phoenix, for appellees and cross-appellants.

JACOBSON, Judge.

The threshold issue raised by this appeal is whether a wife who has been given the actual authority to renew an automobile insurance policy, naming both spouses as insureds, and insuring a specific automobile has the general authority to cancel the policy on the named automobile and substitute another automobile therefor without the knowledge or consent of her husband.

This present action arose out of a personal injury lawsuit brought by plaintiffs-appellees (the Longs) against Mr. and Mrs. Lindsay Mitchell. That personal injury suit had its factual foundation in an automobile accident occurring in Maricopa County, Arizona, on April 6, 1969, when the Long automobile collided with a 1958 Plymouth station wagon owned and driven by Lindsay Mitchell. Upon receiving a summons and complaint Mr. Mitchell tendered his defense to appellant State Farm Insurance Co. (State Farm) with whom he thought he had insurance. Tender was refused on the grounds that no coverage existed under the insurance policy then in existence in the names of the Mitchells. A default judgment in the amount of $48,000 was subsequently taken against Mr. and Mrs. Mitchell. Thereafter, the Mitchells assigned any claim they might have against State Farm to the Longs. Plaintiffs then brought the present action against State Farm claiming a breach of the insurance policy in refusing to defend its insureds, the Mitchells. The trial court granted the Longs' motion for summary judgment and awarded them $48,000 plus interests and costs—the amount of their default judgment against the Mitchells. The factual background underlying the Mitchell insurance policy is as follows:

In May of 1968, both Mr. and Mrs. Mitchell went to State Farm's agent, Wilbur Roman, in Pomona, California, for the purpose of obtaining liability insurance on their 1958 Plymouth station wagon. The application was signed, in the presence of her husband, by Mrs. Mitchell alone; however, the agent placed Mr. Mitchell's name on the receipt for the down payment on the premium. A six-month policy was issued at that time covering the 1958 Plymouth and Lindsay and Frances Mitchell were named as co-insureds. On November 26, 1968, Mrs. Mitchell renewed the policy for another six-month term, which ran from November 16, 1968 to May 16, 1969. Mrs. Mitchell paid Roman the $42 premium and he again placed Mr. Mitchell's name on the receipt. There is some dispute as to whether Mr. Mitchell was still living with Mrs. Mitchell in Pomona when she renewed the policy. We do not deem this dispute to be material insofar as the granting of a motion for summary judgment is concerned. In any event, Mr. Mitchell, sometime prior to the accident, moved to Phoenix, Arizona.

During his stay in Phoenix, Mr. Mitchell talked with his wife on the telephone on several occasions and he told her he wanted her to renew the policy on the Plymouth, but since she had the money, she would have to do so. During this period of time, Mr. Mitchell contributed to his wife's support by sending to her, on occasion, his social security disability check.

In January of 1969, Mr. Mitchell went back to Pomona for a short visit with his family. During his visit, he looked at a 1960 Ford Thunderbird his wife was thinking about buying. After looking at the Ford, the Mitchells talked with State Farm agent Roman about obtaining insurance on the car. The agent told them that the premium on the Ford would not be as much as the premium on the Plymouth because of a second car policy with State Farm. At no time during the conversation with Roman did either of the Mitchells mention the possibility of transferring coverage from the Plymouth to the Ford. The day

following Mr. Mitchell's departure to Phoenix, his wife purchased the 1960 Ford, unbeknown to him.

On March 4, 1969, Mrs. Mitchell contacted Roman about insuring the 1960 Ford. When the agent told her the premium would be $50, Mrs. Mitchell said she could not afford it and then asked about transferring coverage from the Plymouth to the Ford. Roman stated that in order to transfer the insurance it would be necessary to obtain her husband's signature on a release of credit or membership credit form because she and her husband were joint owners of the policy and membership. Mrs. Mitchell's reply was that the Ford was in her name only and Mr. Mitchell had nothing to do with it, and that she needed a car to get to and from work. Thereupon, Roman cancelled the policy on the Plymouth and issued a new policy covering the Ford, naming Mr. and Mrs. Mitchell as co-insureds. At this time Roman knew that Mrs. Mitchell's husband was not living with her in Pomona so he advised her to notify Mr. Mitchell that there was no longer any insurance on the Plymouth. The new policy was mailed to Mrs. Mitchell on or about March 26, 1969.

Mr. Mitchell, on April 6, 1969, while driving his 1958 Plymouth was involved in the automobile accident with the Longs. At the time of the accident, Mr. Mitchell did not know of the cancellation of insurance on the Plymouth. He learned of the cancellation upon tendering defense of the Long action to State Farm.

■ As between husband and wife, in considering the creation and existence of an agency relationship, it is initially necessary to determine whether the fact of marriage adds to, changes, or varies any of the principles of the law which govern the creation and existence of an agency between non-spouses. In our opinion, this question is controlled by California law. As with other classes of persons, a husband or wife

may act as an agent for the other; however, the marital relation *alone* does not make one spouse an agent for the other. Bruton v. Villoria, 138 Cal.App.2d 642, 292 P.2d 638 (1956). As stated in Lovetro v. Steers, 234 Cal.App.2d 461, 44 Cal.Rptr. 604 (1965), "It is well-established that an agency cannot be implied from the marriage relation alone." However, such an inter-spousal agency may be established by circumstantial as well as direct evidence. Davinroy v. Thompson, 169 Cal.App.2d 63, 336 P.2d 1028 (1959). Or such an agency may be established by proof of ratification of acts previously performed without the principal's authority. *See,* 41 C.J.S. Husband and Wife § 66(a).

■ The only meaningful difference between a principal-agent relation existing between spouses and that existing between non-spouses is the degree of proof required to establish and define the agency relationship. The scope of the agent's authority once established rests on the same general principles of agency as applied to other classes of persons.

■ We now proceed to examine the scope of the agency, if any, Mr. Mitchell created in his wife. Mr. Mitchell stated that he told his wife to renew the insurance on the Plymouth. His wife acknowledged that it was under her husband's direction that she contacted Roman in November of 1968 to renew the policy for an additional six-month period. An actual agency was thus created, "by . . . spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." Restatement (Second) of Agency § 26 (1957); Aetna Loan Co. v. Apache Trailer Sales, 1 Ariz.App. 322, 402 P.2d 580 (1965).

■ Undeniably, Mr. Mitchell, as principal, created actual authority in his wife, as his agent, to renew the policy on the auto-

mobile owned by both of them,[1] but does this agency give the agent authority to cancel the policy without the consent or knowledge of the principal?

The authority of one co-insured to cancel a policy of insurance on jointly owned property was passed upon in Kent v. Dairyland Mutual Ins. Co., 177 Neb. 709, 131 N.W.2d 146 (1964). In that case a father and son jointly owned an automobile. The son applied for the insurance and paid about one-third of the premium; the father paid the balance. The policy named father and son as co-insureds. The son, on his own initiative and without his father's knowledge cancelled the policy. Not until after an accident did the father learn of the purported cancellation. The Court held that the son did not have any authority to cancel the policy. In support of its position the court quoted from Jones v. Dubuque Fire and Marine Ins. Co., 317 Pa. 144, 176 A. 208 (1934):

"Where property is owned jointly, and so insured, one owner cannot cancel the policy of insurance and substitute another therefor without the consent of the co-insured." 131 N.W.2d at 154.

■ As the *Jones* case points out the consent of *all* persons insured must be given to effectuate a cancellation. The consent of one is ineffective. The Court in *Kent* further stated "[that] the express authority to buy an insurance policy does not carry with it the implied authority to cancel such policy."

■ Having established that Mrs. Mitchell had the actual authority to obtain and renew a policy of insurance covering a jointly-owned automobile, we find no evidence that Mr. Mitchell either told his wife or indicated to her in any way that she had the authority to cancel the policy on the Plymouth and apply the unearned premium to a new policy covering the Ford. Mrs. Mitchell did not discuss the possibility of cancelling the policy with her husband

when they both looked at the car she had contemplated buying. She never mentioned the subject to her husband. The wife's authority was limited solely to the renewal of the policy and under such circumstances she did not have the right to cancel it. *See*, Mobile Fire & Marine Ins. Co. v. Kraft, 36 Ala.App. 684, 63 So.2d 34 (1953).

Not having created any expressed or implied authority to cancel the policy in his wife, it is necessary to determine if Mr. Mitchell created an apparent or ostensible agency in her to cancel the policy. Apparent or ostensible authority is defined in the Restatement (Second) of Agency § 27 (1957) as follows:

". . . [A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."

■ To bind a principal on the basis of apparent authority, Arizona requires that "the person dealing with the agent must have knowledge of the principal's conduct and [he] must have been misled thereby." Pacific Guano Co. v. Ellis, 83 Ariz. 12, 315 P.2d 866 (1957).

Mr. Mitchell did not by his own acts or conduct give the impression to anyone that his wife had the apparent authority to cancel the insurance policy on the Plymouth. The only person who could have possibly thought that the wife had such apparent authority was Roman. Mr. Mitchell met with the insurance agent on only two occasions, and during those two meetings the conversations related only to the purchase of insurance. The conversations never touched upon cancellation or transfer of unearned premiums. We find no evidence that Roman was misled by any actions attributable to Mr. Mitchell. Furthermore,

1. It is not clear from the record who held title to the Plymouth, but it is clear that the car was purchased during the marriage, hence it is presumed to be community property. *See*, Calif.Civil Code § 5110.

Roman knew that both spouses were joint owners of the policy and membership. He also knew that the only way he could transfer the insurance would be in both names. Without Mr. Mitchell's signature, he could not technically transfer the insurance, so he cancelled the policy and issued a new one, thereby accomplishing indirectly that which he could not do directly, by an authorization to "transfer" the coverage from the Plymouth to the Ford signed only by the wife. Upon completion of the cancellation forms, Roman advised Mrs. Mitchell to notify her husband that there was no longer any insurance on the Plymouth.

It cannot be seriously argued that because the husband left the renewal of the policy up to his wife, he acted with want of ordinary care[2] or he failed to do something in order to dispel any notion that his wife had the authority which she had exercised. Since Mr. Mitchell had no inkling of his wife's act he had no duty, of course, to check with Roman to see if the insurance had been cancelled.

When a person deals with a known agent, he does so at his peril. Brown v. Armenta, 21 Ariz. 334, 188 P. 260 (1920); United States Credit Bureau, Inc. v. Cheney, 235 Cal.App.2d 357, 45 Cal.Rptr. 525 (1965). Roman, as an agent of State Farm, knew that Mr. Mitchell had not consented to the cancellation of the policy. Therefore, the attempted cancellation as to Mr. Mitchell was ineffective and State Farm remained liable to Mr. Mitchell on the original policy.

Appellant contends that Mr. Mitchell abandoned his wife and that as a result she had implied authority to manage and control the community personal property, which would enable her to cancel the insurance policy without the consent of her husband.

We have previously indicated that there was some dispute as to whether Mr. Mitchell was living with his wife at the time the policy was renewed, but that this dispute was immaterial. Assuming that Mr. Mitchell was absent and such absence did constitute desertion and further that his power to manage and control the community property passed to his wife out of necessity, we hold that the wife did not have the power to cancel the insurance policy. The Court agrees that a wife, who has been abandoned by her husband, has the legal authority to manage the community property and to contract debts for necessities. City of Phoenix v. Dickson, 40 Ariz. 403, 12 P.2d 618 (1932). Also see A.R.S. § 25–215. However, we hold that this authority is limited and can only affect community property left in the possession and control of the wife.

The automobile affected in this case was in the possession and control of the husband. We do not believe that it can be argued that the wife could sell or dispose of this automobile under any rights arising from her husband's abandonment of her. Nor, in our opinion, could she under such rights affect the insurance covering that automobile.

In reviewing a motion for summary judgment this court must construe the record in the light most favorable to the party opposing the motion. Mermis v. Weeden & Co., 8 Ariz.App. 166, 444 P.2d 524 (1968). We have applied this test in finding that there is simply no evidence in the record which could support the theory that Mrs. Mitchell, as an agent of her husband had any authority to cancel the insurance policy on the Plymouth. Thus, the trial court was correct in granting appellees' motion for summary judgment against State Farm.

Appellees by cross appeal contend that the appeal should be dismissed for there

---

2. In Lovetro v. Steers, 234 Cal.App.2d 461, 44 Cal.Rptr. 604 (1965), the Court held that the wife failed to use ordinary care when she failed to inquire why payments on a note executed by her husband had not been made. The wife's inaction with knowledge of non-payment was sufficient to create apparent authority in the husband to perform acts which would otherwise be beyond his authority.

was insufficient evidence to support the trial court's findings that State Farm timely filed a bond for costs on appeal.

On May 26, 1970 summary judgment for $48,000 was entered against State Farm. On June 26, 1970 appellant filed its notice of appeal. Appellees on July 29 notified appellant that the records of the Clerk of the Superior Court failed to show that a bond for costs on appeal had been filed. In response thereto appellant on August 6, 1970 made a motion in Superior Court for substitution of copies for lost or destroyed original documents in accordance with 16 A.R.S. Rules of Civil Procedure, Rule 80(h).

In a proceeding to prove the loss of an original document it is reasonable for the Court to consider evidence by sworn affidavits. State Trust Co. v. Toms, 244 N.C. 645, 94 S.E.2d 806 (1956). The affidavits filed by the appellant were sufficient to establish a prima facie case that an appeal bond for costs had been filed but was misplaced or lost. In the findings of fact and conclusion of law issued by the trial court on October 16, 1970, Judge LaPrade stated:

"The testimony showed that it is possible for documents filed of record in the Clerk's office to be lost. It is also possible for them to be misfiled and there have to this Court's knowledge even been cases where an entire file has been misplaced." Judge LaPrade continued by stating: "The evidence that the document in question was filed, and was lost, is more persuasive to this Court . . .. The steps taken and the method of delivery to the Clerk was customary and usual in the practice of law." This court will not disturb findings of fact reached by the trial court based upon reasonable inferences which may be drawn from the facts. De Santis v. Dixon, 72 Ariz. 345, 236 P.2d 38 (1951).

Appellees' argument raised by their cross appeal is not new to this Court as we considered precisely the same issue on appellees' motion to dismiss. We denied the motion to dismiss and thereafter, the Ari-

zona Supreme Court denied appellees' petition for a special action.

We hold that sufficient evidence was presented to Judge LaPrade to warrant his conclusion that appellant's bond for costs on appeal had been timely filed but was lost or misfiled.

Judgment is affirmed.

HAIRE, P. J., and EUBANK, J., concur.