635 P.2d 511

**Johnny TORREZ and Thelma Torrez, husband and wife, Edmundo Ruiz and Martha Ruiz, husband and wife, Plaintiffs-Appellants,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Garnishee-Defendant-Appellee.**

No. 1 CA–CIV 4834.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 25, 1981.

Rehearing Denied Oct. 7, 1981.

Review Denied Oct. 27, 1981.

* On June 16, 1981 the Supreme Court declined to accept jurisdiction of the Petition for Special Action.

Moore, Demaree & Long by Bruce Demaree, James B. Long, Phoenix, for plaintiffs-appellants.

Hofmann, Salcito & Stevens, P. A. by Leroy W. Hofmann, Phoenix, for garnishee-defendant-appellee.

## OPINION

CONTRERAS, Presiding Judge.

This appeal concerns the validity of an exclusion endorsement in an insurance policy issued by appellee to a third party. We

find that the exclusion endorsement is valid and therefore affirm the summary judgment granted appellee by the trial court.

## FACTUAL BACKGROUND

The uncontroverted facts before the trial court are as follows. Prior to 1975, Mr. and Mrs. DeBreceny's 1966 Rambler was insured by appellee. In February 1975, their son, Brian, was added to the policy as principal driver of the Rambler. In May 1975, an agent of appellee discovered that Brian had been convicted and fined for driving while intoxicated. As a result, the agent notified Mr. and Mrs. DeBreceny in writing of appellee's intention to cancel their policy covering the Rambler as well as two other automobile policies in effect unless they agreed to a Driver Exclusion Endorsement absolving appellee of liability for Brian's driving. Mr. DeBreceny accepted the exclusion endorsement by signing a Policy Change Agreement on May 27, 1975.[1] Seven months later, on January 3, 1976, Brian was driving the Rambler when he was involved in an accident in which appellants were injured.

Appellants brought an action against the DeBrecenys alleging negligent operation of the vehicle by Brian and negligent entrustment of the vehicle by Mr. and Mrs. DeBreceny. All four appellants obtained judgments against the DeBrecenys and thereafter had a writ of garnishment issued and served on appellee. Appellee denied it was indebted to the DeBrecenys and, following discovery, both parties moved for summary judgment. On March 9, 1979, the trial court granted summary judgment for appellee, and appellants brought this appeal.[2]

## EXCLUSION FOR ONE WHO "CUSTOMARILY OPERATES" A MOTOR VEHICLE

Appellants' first contention is that appellee had no statutory authority to request that Brian be excluded from coverage.

A.R.S. § 20–1631 (amended 1977) outlines procedures for the cancellation of motor vehicle insurance. It provides in relevant part:

C. The company shall not cancel or fail to renew the insurance when a person other than the named insured has violated paragraph 3 of subsection B of this section [see below] provided the named insured in writing agrees to exclude as insured such person by name when operating a motor vehicle and further agrees to exclude coverage to the named insured for any negligence which may be imputed by law to the named insured arising out of the maintenance, operation, or use of a motor vehicle by such excluded person.

Paragraph 3 of subsection B provides:

After this policy has been in effect sixty days, or if the policy is a renewal, effective immediately, the company shall not exercise its right to cancel or fail to renew the insurance . . . unless:

. . . .

hereunder is driven or operated by Brian P. DeBreceny.

The named insured further agrees that the company shall not be liable and no liability or obligation of any kind shall attach to the company for any negligence which may be imputed by law to the named insured arising out of the maintenance, operation or use of a motor vehicle by the person named above.

---

1. The Policy Change Agreement provided:

   I hereby agree to accept a policy (or policies) containing the Exclusion Endorsement 6023.-3J described on the front side hereof.
   I further agree to the inclusion of such an endorsement in any subsequent transfer, reinstatement or renewal of such policy or policies to be issued.
   The endorsement provided:
   6023.3J DRIVER EXCLUSION ENDORSEMENT (Statutory)
   In consideration of the premium at which the policy is written, the named insured agrees that the company shall not be liable and no liability or obligation of any kind shall attach to the company for losses or damage sustained while any motor vehicle insured

2. During oral argument before this court, appellee questioned appellants' standing to bring suit contesting an insurance contract to which they were not parties. The issue was not raised below, and appellee may not raise it for the first time on appeal. *Crook v. Anderson*, 115 Ariz. 402, 565 P.2d 908 (App.1977).

3. The named insured, *any person who resides in the same household as the named insured and customarily operates a motor vehicle insured* under the policy, or any other person who regularly and frequently operates a motor vehicle insured under the policy:

. . . .

(c) Is or has been convicted during the thirty-six months immediately preceding the effective date of the policy or during the policy period, for:

. . . .

(ii) Operating a motor vehicle while in an intoxicated condition or while under the influence of drugs.

(emphasis added).

Appellants contend that Brian was not a person who "customarily operates a motor vehicle insured under the policy" and therefore appellee was in violation of the statute by requiring the exclusion endorsement to prevent cancellation. Appellants' argument continues that since the exclusion endorsement was improperly required, it is void and appellee is liable under the remaining provision of the DeBrecenys' policy.

Appellants point to the definition of *customarily* accepted by the Utah Supreme Court in an Industrial Commission case for determining whether a salesman is customarily engaged in an independently established business. *See Fuller Brush Co. v. Industrial Commission,* 99 Utah 97, 104 P.2d 201 (1940). Because of the difference in the use of the word, we do not find this case controlling. (Nonetheless, we find the definition used there to be in harmony with our decision today). Appellants also point to a decision of the Arizona Supreme Court where the court discussed the word *custom* as it referred to the tort principle of custom and usage. *See Coyner Crop Dusters v. Marsh,* 90 Ariz. 157, 367 P.2d 208 (1961), *remanded on other grounds,* 91 Ariz. 371, 372 P.2d 708 (1962). We do not find the language of that case controlling since it dealt with a theory of law entitled "custom and usage" as opposed to the definition of *customary* in its ordinary sense.

In interpreting statutes, each word is to be given meaning. *Frye v. South Phoenix Volunteer Fire Co.,* 71 Ariz. 163, 224 P.2d 651 (1950). Under this rule, the terms *customarily* and *regularly and frequently* cannot have the same meaning since they are used with different significance in the statute. The statute provides that insurance may be cancelled for actions by the named insured or a member of his household who customarily operates the vehicle. The test for any other person is whether he regularly and frequently operates an insured vehicle. Thus, it is clear the legislature intended two different standards. Accordingly, *customarily* and *regularly and frequently* cannot have the same meaning in this statute.

In addition, words of a statute are to be given their common, ordinary meaning. *State v. Carter,* 123 Ariz. 524, 601 P.2d 287 (1979), A.R.S. § 1–213. *Customary* is defined as based or established by "a usage or practice common to many or to a particular place or class or habitual with an individual." Webster's New Collegiate Dictionary (1976). Thus, customarily connotes a regular, common or habitual practice without reference to frequency.

The uncontroverted facts indicate that Brian was listed as the principal operator of the Rambler from February 1975 until April 1975. (In April 1975, Brian purchased an automobile and was listed as the principal operator for the new vehicle.) Nonetheless, Brian testified that he drove his parents' automobiles (including the Rambler) seven or eight times throughout 1975 and on these occasions, it was done with his parents' knowledge and permission. While this is not frequent use, it is customary in the sense that it was a common, regular practice. Therefore, Brian was a person residing in the same household as the named insured who customarily operated an insured vehicle. As such, his conviction for driving while intoxicated gave appellee statutory authority to request the exclusion to prevent cancellation.

## NOTICE REQUIREMENT

■ Appellants contend that appellee failed to comply with the notice requirements of A.R.S. § 20–1632(A) and that such failure "invalidate[d] any cancellation, non-renewal or reduction in limits of liability or coverage" as provided in A.R.S. § 20–1632(B).

A.R.S. § 20–1632(A) provides in part:

A notice by the insurer to the policyholder of non-renewal, cancellation or reduction in the limits of liability or coverage shall be mailed to the named insured by certified mail or United States post office certificate of mailing at least ten days prior to the effective date of such non-renewal, cancellation or reduction in limits of liability or coverage. Such notice shall include or be accompanied by a statement in writing of the reasons for such action by the insurer and a notice indicating the named insured's right to complain to the director of the insurer's action within ten days after receipt of the notice by the insured.

Failure to comply with this subsection invalidates any cancellation, non-renewal or reduction in limits of liability or coverage. *Civil Service Employees Insurance Co. v. Rodriquez,* 25 Ariz.App. 534, 544 P.2d 1135 (1976); A.R.S. § 20–1632(B).[3] Appellee does not dispute that it did not send such a notice.

■ Appellee's position is that the word *notice* in the statute refers to notice of unilateral action by the insurer and that since appellee had taken no action but had only announced its intention to cancel DeBrecenys' policies if they did not agree to the exclusion, no notice was required. In addition, appellee argues that when the DeBrecenys were asked to approve the exclusion, they had no appeal rights to which the statutory notice would have referred since appellee had done nothing beyond announcing its intention to act. In this regard, appellee directs our attention to A.R.S. § 20–1631(C) (amended 1977) which provides:

The company shall not cancel or fail to renew the insurance when a person other than the named insured has violated paragraph 3 of subsection B of this section *provided the named insured in writing agrees to exclude as insured such person by name* when operating a motor vehicle and further agrees to exclude coverage to the named insured for any negligence which may be imputed by law to the named insured arising out of the maintenance, operation, or use of a motor vehicle by such excluded person.

(emphasis added). This subsection contemplates that the insurer will not, and indeed "shall not" cancel or fail to renew the insurance provided the insured agrees in writing with the insurer to exclude as an insured, by name, a person who has violated paragraph 3 of subsection B of A.R.S. § 20–1631. The clear import of the letter by appellee to its insureds was that unless they agreed to accept a policy containing a driver exclusion endorsement, the appellee would proceed to cancel the policy. This is pointedly brought home in the concluding paragraph of appellee's letter to its insureds which, after reciting the reason for the driver exclusion endorsement, the driver to be excluded, the driver exclusion endorsement, and the means of effecting agreement to this policy change, states:

If we do not hear from you within the next 12-day period, we will proceed with termination in keeping with the terms of the policy contract and Arizona law.

Here the insureds were given the option of continuing their policy by agreeing in writing to the driver exclusion endorsement or facing the alternative of termination in the immediately foreseeable future. If the insureds had not agreed, the insurer could have then proceeded with the cancellation procedures set forth in A.R.S. § 20–1632, including the mandated notice requirements. A.R.S. § 20–1632 by its terms only applies to *notices* by the insurer to the

---

3. This subsection provides:

Failure of the insurer to comply with subsection A shall invalidate any cancellation, non-renewal or reduction in limits of liability or coverage, except a cancellation or non-renewal for nonpayment of premium.

insured of "non-renewal, cancellation or reduction in the limits of liability or coverage" without the agreement of the insured. Since the letter from the insurer was not a notice of cancellation, the appellee was not required to follow the notice requirements of A.R.S. § 20–1632. To determine otherwise would have the effect of denying an insured the right to continued insurance if he agreed to a driver exclusion endorsement, along with the correlative right of the insurer to then proceed and cancel the insurance if no such agreement was reached.

## EXCLUSION FOR NEGLIGENCE IMPUTED BY LAW

■ The exclusion endorsement agreed to by the DeBrecenys provides that the appellee "shall not be liable and no liability or obligation of any kind shall attach for losses or damages sustained" while an insured vehicle is operated by Brian. In addition, the appellee shall not be liable for "any negligence which may be imputed by law to the named insured arising out of the maintenance, operation, or use of a motor vehicle" by Brian. Appellants contend that the endorsement does not exclude from coverage *direct* negligence by Mr. and Mrs. DeBreceny; only their *imputed* negligence is excluded. Therefore, appellants argue that the negligent entrustment of the vehicle to Brian was the *direct* negligence of Mr. and Mrs. DeBreceny and not excluded under the endorsement. We disagree.

The endorsement contains two paragraphs (see footnote 1, *supra*). The first paragraph absolves appellee of liability for damages sustained while Brian is operating any *insured* vehicle. Since Brian was driving the insured Rambler at the time of the accident, appellee's liability is controlled by this paragraph which provides that appellee "shall not be liable and no liability or obligation *of any kind* shall attach to the company for losses or damage sustained" while Brian is operating an insured vehicle. Therefore, the exclusion is effective to absolve appellee of any liability arising from this accident.

The second paragraph of the endorsement further limits appellee's liability. It provides that the appellee will not be liable for "negligence which may be imputed by law" to the named insured arising out of the operation of *any vehicle* by Brian. Since the first paragraph completely absolves appellee of liability for damages arising from the operation of an *insured* vehicle, "any vehicle" in the second paragraph must mean an uninsured vehicle or a vehicle owned by someone other than the DeBrecenys. Therefore, if the accident had occurred when Brian was driving an uninsured vehicle or a vehicle owned by someone other than the DeBrecenys, the appellee would not be liable for any negligence "which may be imputed by law" to the named insured. Since these were not the facts of this case, the second paragraph of the endorsement is not applicable.

## AUTHORITY TO BIND MRS. DeBRECENY

■ Appellant contends there exists a question of material fact as to whether the exclusion endorsement was binding upon Mrs. DeBreceny since she did not sign it or give Mr. DeBreceny her express authorization to sign it on her behalf.

We have said regarding this issue:

As with other classes of persons, a husband or wife may act as an agent for the other; however, the marital relation *alone* does not make one spouse an agent for the other.... However, such an interspousal agency may be established by circumstantial as well as direct evidence.... Or such an agency may be established by proof of ratification of acts previously performed without the principal's authority.

*State Farm Mutual Automobile Insurance Co. v. Long*, 16 Ariz.App. 222, 225, 492 P.2d 718, 721 (1972) (emphasis in original); *accord, Gruber v. Castleberry*, 23 Ariz.App. 322, 533 P.2d 82 (1975). In *Long*, we found that an actual agency had been created between the husband and wife by "spoken words or other conduct of the principal which, reasonably interpreted, cause[d] the agent to believe that the principal desire[d] him so to act on the principal's account."

In response to questions asked at her deposition, Mrs. DeBreceny testified:

Q Would I be fair to say that your husband is the one who normally handled procuring insurance and dealing with the agent?

A Right. Everything.

. . . .

Q So would I be fair to say that he took care of it and you left it up to him to do it?

A That's right.

Q You relied on him to do it?

A Yes.

We find this past pattern of conduct by Mr. and Mrs. DeBreceny sufficient to create an agency relationship between her and her husband with regard to insurance matters and therefore hold that Mr. DeBreceny had authority to bind Mrs. DeBreceny and that the exclusion endorsement was effective as to both of them.

Having found no error, the judgment of the trial court is affirmed.

OGG, J., and YALE McFATE, Judge, Retired, concur.

NOTE: The Honorable Yale McFate was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz.Const. art. VI, § 20.