772 P.2d 26

**Nancy REED, an unmarried woman, Plaintiff/Appellant,**

v.

**Barry GERSHWEIR, M.D., and Davita Gershweir, husband and wife, Defendants/Appellees.**

No. 2 CA–CV 88–0256.

Court of Appeals of Arizona, Division 2, Department A.

Jan. 19, 1989.

Review Denied May 9, 1989.*

---

* Feldman, V.C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Booke & Berlin by Laurence M. Berlin, Tucson, for plaintiff/appellant.

Slutes, Sakrison, Even, Grant & Pelander, P.C. by Tom Slutes and Bruce G. Macdonald, Tucson, for defendants/appellees.

## OPINION

HOWARD, Judge.

This is an appeal from a defense verdict in a malpractice action. The determinative issue in this case is whether a physician who asks another physician "to cover" for him in his absence can be held liable for the other physician's malpractice.

Dr. Gershweir was the plaintiff's doctor. Due to a spontaneous miscarriage, Dr. Gershweir determined that a. dilation and curettage (D & C) was necessary. After this procedure, certain drugs were prescribed to control the pain and the bleeding and the plaintiff went home. She continued to suffer pain and bleeding and had a fever. She called the doctor twice after the operation. Nine days after the D & C she called the doctor a third time because of these problems. Dr. Gershweir's answering service had his backup, Dr. Damon Raphael, answer plaintiff's call. Gershweir had made an arrangement with Drs. Raphael and Edelberg to have .a rotating system to cover for each other when they were out of town. Raphael's response to the plaintiff's complaints was to refill her prescriptions.

As a result of the D & C, plaintiff had developed an infection and approximately six days after she spoke to Dr. Raphael, she was admitted to Tucson Medical Center and her entire reproductive system was removed because of the infection. There was expert testimony that if the plaintiff had been seen by a doctor and received proper treatment there would have been a 70 to 80 percent chance of a cure.

█ Plaintiff subsequently filed this lawsuit against Dr. Gershweir. One of her theories of negligence against Dr. Gershweir was based on his vicarious liability for the acts of Dr. Raphael. Her instruction on this theory was rejected by the trial court which, instead, instructed the jury that the referring physician is not liable for the negligent acts of the covering physician so long as the referring physician exercises reasonable care in selecting the covering physician. She contends that the rejection of her instruction and the giving of the instruction absolving Gershweir from any negligence on the part of Dr. Raphael constituted reversible error.[1] We do not agree and affirm.

█ The general rule is that a physician is not liable for a substitute's negligence unless the substitute physician is in his employment or is his agent, partner, or unless due care is not exercised in making the substitution. *Johnston v. Ward,* 288 S.C. 603, 344 S.E.2d 166 (App.1986); *Impastato v. De Girolamo,* 117 Misc.2d 786, 459 N.Y.S.2d 512, aff'd. 95 A.D.2d 845, 464 N.Y.S.2d 382 (Supp.1983); *Kavanaugh by Gonzales v. Nussbaum,* 71 N.Y.2d 535, 528 N.Y.S.2d 8, 523 N.E.2d 284 (App.1988); 61 Am.Jur.2d, *Physicians and Surgeons,* § 295, 443 (1981); C.J.S. *Physicians and Surgeons,* § 83(c), 489 (1987). Vicarious liability for medical malpractice generally turns on agency or control in fact, or apparent or ostensible agency. *Kavanaugh by Gonzales v. Nussbaum,* supra.

---

1. Appellant did not move for a new trial and is thus precluded from raising the failure to give her instruction which necessarily requires an examination of the sufficiency of the evidence. See *Lewis v. Southern Pacific Co.,* 105 Ariz. 582, 469 P.2d 67 (1970). However, review of the defense instruction given by the court is subject to appellate review because it involves the legality of an instruction which was actually given. See *Blankinship v. Duarte,* 137 Ariz. 217, 669 P.2d 994 (1983).

There was no evidence here that Dr. Raphael was in Dr. Gershweir's employ or was his agent in fact, or his partner. Nor is there any evidence that Dr. Gershweir was negligent in selecting Dr. Raphael to be his substitute.

■■■ An apparent or ostensible agent is one where the principal has intentionally or inadvertently induced third persons to believe that such a person was his agent although no actual or express authority was conferred on him as agent. *Gulf Insurance Company v. Grisham*, 126 Ariz. 123, 613 P.2d 283 (1980). Apparent or ostensible authority may be defined as that authority which the principal knowingly or negligently holds his agent out as possessing, or permits him to assume, under such circumstances as to estop the principal from denying its existence. *Koven v. Saberdyne Systems, Inc.*, 128 Ariz. 318, 625 P.2d 907 (App.1980). Apparent authority can never be derived from the acts of the agent alone. Instead, when dealing with apparent authority, the emphasis shifts to the third party's reliance on the acts of the alleged principal and the agent as opposed to any express or implied grant by the principal. Consequently, in order to establish apparent authority the record must reflect that the alleged principal not only represented another as his agent, but that the person who relied on the manifestation was reasonably justified in doing so under the facts of the case. *Koven v. Saberdyne Systems, Inc.*, supra. There is no evidence of apparent or ostensible agency in this case. What is missing is some sort of legal or actual authority or control of the treating physician by the regular physician. The act of having another doctor cover for him does not create an ostensible agency. See *Kavanaugh by Gonzales v. Nussbaum*, supra.

Covering arrangements are a common and accepted practice. As observed by the court in *Kavanaugh by Gonzales:*

> while it is in the nature of the medical profession that a patient's emergency can arise at any moment, surely no person expects that his or her regular physician will *always* be there to respond. If

liability were now to be imposed vicariously on physicians for the independent negligence of their covering doctors, some would doubtless be discouraged from making arrangements for the continuous care of their patients, but those who chose to or had to—if they are now to be made insurers of their colleagues' independent acts—would be compelled to insure themselves accordingly. In either event, the public interest would ultimately be disserved.

523 N.E.2d at 289. (Emphasis in original.) The burden of proof was on the plaintiff to prove agency. *Gulf Insurance Company v. Grisham, supra.* She failed to do so and the trial court did not err in its giving and refusing of instructions.

AFFIRMED.

FERNANDEZ, V.C.J., and HATHAWAY, J., concur.