132 P.3d 304

Loretta HENRY, Charles L. Arnold as the Guardian Ad Litem for Quilana Henry, and Roscoe Henry, Plaintiffs/Appellants/Cross–Appellees,

v.

FLAGSTAFF MEDICAL CENTER, INC., Defendant/Appellee/Cross–Appellant.

No. 1 CA–CV 05–0123.

Court of Appeals of Arizona, Division 1, Department C.

April 20, 2006.

**366**

Begam Lewis Marks & Wolfe, P.A., by Elliot G. Wolfe and Richard P. Traulsen, Phoenix, Attorneys for Plaintiffs/Appellants/Cross–Appellees.

Campbell, Yost, Clare & Norell, P.C., by Jeffrey J. Campbell, Kari B. Zangerle, Vincent A. Maeder and Seema Kamal, Phoenix, Attorneys for Defendant/Appellee/Cross–Appellant.

## OPINION

EHRLICH, Judge.

¶ 1 Loretta Henry[1] appeals the denial of a requested jury instruction regarding the definition of ostensible or apparent agency and the grant of a new trial to the Flagstaff Medical Center ("FMC"). FMC cross-appeals the denial of its motion for judgment as a matter of law ("JMOL"). We conclude that FMC was entitled to JMOL. Accordingly, we reverse and remand this matter to the superior court for the entry of a judgment in favor of FMC.

### *FACTS AND PROCEDURAL BACKGROUND*

¶ 2 In February 2000, Mrs. Henry was pregnant. When she began experiencing abdominal pain, she sought care at the Indian Health Services' Clinic in Keams Canyon. A physician at the Clinic transferred Mrs. Henry's care to an FMC obstetrician. The obstetrician in turn requested a surgical consultation with Dr. Kraig Knoll, who was "on-call" for the physicians' group that provided surgical services for FMC.

¶ 3 Mrs. Henry read and signed an admission form upon her arrival at FMC. Dr. Knoll then examined her and explained that she needed to have her gall bladder removed. Mrs. Henry signed two separate but identical consent forms.[2] An FMC nurse discussed the forms with Mrs. Henry before Mrs. Henry signed them, but no one told Mrs. Henry whether Dr. Knoll was an FMC employee or agent.

¶ 4 Dr. Knoll performed surgery on Mrs. Henry. Subsequently, she filed a complaint against FMC, alleging that, as a result of Dr. Knoll's negligence in performing this surgery, she and the child born to her suffered injuries and resultant damages.

¶ 5 Mrs. Henry claimed that FMC is vicariously liable for Dr. Knoll's negligence under a theory of apparent agency.[3] FMC moved for summary judgment and JMOL, arguing that Mrs. Henry could not establish an apparent agency relationship between it and Dr. Knoll. The trial court denied FMC's motions on the basis that Mrs. Henry had presented a question of fact for the jury to decide.

¶ 6 The jury found that Dr. Knoll was an apparent agent of FMC. FMC then renewed its motion for JMOL and, alternatively, for a new trial based in part on erroneous jury instructions with regard to apparent agency. The trial court granted the motion for new trial in part because it determined that it had failed to properly instruct the jury. Mrs. Henry appealed, and FMC cross-appealed.[4]

---

1. During the pendency of this appeal, Mrs. Henry died. For ease of reference, we will, however, continue to make mention of the parties as if Mrs. Henry were still alive.

2. The first scheduled surgery was cancelled because Mrs. Henry's laboratory work had not been received. Mrs. Henry signed consent forms for both scheduled surgeries.

3. The phrases "apparent agency" and "ostensible agency" are interchangeable references for the same theory. *See* Restatement (Second) of Agency § 8 cmt. e (1958). In this opinion, we will use the phrase "apparent agency" unless a quotation requires a different usage.

4. The parties filed premature notices of appeal and cross-appeal from the trial court's unsigned minute entry. The trial court subsequently entered a signed judgment. Because a final judgment was entered, the parties' premature notices of appeal were deemed to be timely. *See Barassi v. Matison*, 130 Ariz. 418, 421–22, 636 P.2d 1200, 1203–04 (1981).

## DISCUSSION

### A. Apparent Agency

■ ¶7 Arizona law does not presume an apparent agency relationship. As stated by the Arizona Supreme Court in *Miller v. Mason–McDuffie Co. of Southern California*, 153 Ariz. 585, 589, 739 P.2d 806, 810 (1987):

> The touchstone of apparent authority is conduct of a principal that allows a third party reasonably to conclude that an agent is authorized to make certain representations or act in a particular way. It is firmly established that if the principal's conduct creates apparent authority, the principal is subject to liability for the agent's actions even if the agent was acting for his own purposes.

(Citations omitted.) Arizona follows a three-part test to determine whether an apparent agency relationship exists. *See Reed v. Gershweir*, 160 Ariz. 203, 205, 772 P.2d 26, 28 (App.1989). First, the principal, through its conduct, must represent another to be its agent. *Id.* Second, the third party must have relied on these representations. *Id.* Third, the third party's reliance must be reasonable. *Id.*

■ ¶8 In *State Farm Mutual Automobile Insurance Co. v. Long*, 16 Ariz.App. 222, 226, 492 P.2d 718, 722 (1972), this court adopted the definition of apparent authority from the Restatement (Second) of Agency § 27 (1958):

> [A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

Thus, while a hospital's oral or written statement acknowledging a particular doctor as its agent may be sufficient to establish apparent agency, it is not necessary. Still, some conduct on the part of the hospital is required.

¶9 Courts in other jurisdictions have held that the first part of the apparent agency test is satisfied when the hospital has "held itself out as the provider of care" unless the hospital gave the patient some contrary notice that the physician was an independent contractor. *Mejia v. Community Hospital of San Bernardino*, 99 Cal.App.4th 1448, 122 Cal.Rptr.2d 233, 237 (2002); *see also Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 152 (Ind.1999); *Burless v. W. Va. Univ. Hosps., Inc.*, 215 W.Va. 765, 601 S.E.2d 85, 96 (2004) (explaining that "[t]he 'contrary notice' referred to by the court in *Mejia* generally manifests itself in the form of a disclaimer"). In *Mejia*, the court stated that a patient who relies on a hospital to provide her with a surgeon instead of relying on her own surgeon "may reasonably assume that the physician or surgeon is an employee or agent of the hospital unless the patient has reason to know that the physician or surgeon is not an employee or agent of the hospital." 122 Cal. Rptr.2d at 237. In *Sword*, the court went further, holding that, "[u]nder some circumstances, such as in the case of a medical emergency ... written notice may not suffice if the patient had an inadequate opportunity to make an informed choice." 714 N.E.2d at 152.

¶10 With regard to the reliance element of the apparent agency test, other courts have found this element to be satisfied when the patient turns to the hospital rather than selecting her own physician for care. *Mejia*, 122 Cal.Rptr.2d at 237; *Burless*, 601 S.E.2d at 97. In *Mejia*, the court held that reliance could be presumed unless the patient had some reason to know that the treating physician was not employed by or an agent of the hospital. 122 Cal.Rptr.2d at 237; *see also Sword*, 714 N.E.2d at 152 ("[I]f the hospital has failed to give meaningful notice, if the patient has no special knowledge regarding the arrangement the hospital has made with its physicians, and if there is no reason that the patient should have known of these employment relationships, then reliance is presumed.").

¶11 The court in *Mejia* purported to follow the majority of jurisdictions in applying this presumption of reliance. 122 Cal. Rptr.2d at 240. It also of necessity declined to consider the Restatement definition of apparent agency because California has a statutory definition of ostensible agency, *id.* at 236

**368**

n. 2, which is "when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." *Id.* at 239 (quoting Cal. Civ.Code § 2300). In *Mejia*, the only conduct by the hospital was the acceptance of patients, but the court found that this was sufficient, holding that "all a patient needs to show is that he or she sought treatment at the hospital" to establish apparent agency. *Id.* at 240. Thus, the court demanded less than the Restatement (Second) of Agency § 27 requires.[5]

¶ 12 Arizona courts, however, in accord with the Restatement (Second) of Agency § 27, require both some conduct by the principal and a showing of justifiable reliance by the third party. *See Miller*, 153 Ariz. at 589, 739 P.2d at 810; *State Farm*, 16 Ariz.App. at 226, 492 P.2d at 722. We therefore decline to follow *Mejia*. To impose vicarious liability on a hospital for accepting patients without more would be a change in the public policy that has been consistently followed in our cases on apparent agency. Such public policy changes are best left to the state legislature. *See Roosevelt Elem. Sch. District v. State*, 205 Ariz. 584, 591 ¶ 33, 74 P.3d 258, 265 (App.2003); *Winsor v. Glasswerks Phx, L.L.C.*, 204 Ariz. 303, 310–11 ¶¶ 24–25, 63 P.3d 1040, 1047–48 (App.2003).

■ ¶ 13 Mrs. Henry argues that the first element of the test for apparent agency could be satisfied by the principal's intentional, inadvertent or negligent acts. Although in some cases, an Arizona appellate court has stated that it may consider a principal's negligent offering of the agent in determining the existence of an apparent agency relationship. *See Reed*, 160 Ariz. at 205, 772 P.2d at 28 ("Apparent or ostensible authority may be defined as that authority which the principal knowingly or negligently holds his agent out as possessing, or permits him to assume, under such circumstances as to estop the principal from denying its existence."); *Holsclaw v. Catalina Sav. & Loan Ass'n*, 13 Ariz.App. 362, 366, 476 P.2d 883, 887 (1970) (stating in dicta that apparent agency "is

often shown by negligent or inadvertent conduct of the principal which would cause a reasonable man to infer the existence of an agency relationship"); *O.S. Stapley Co. v. Logan*, 6 Ariz.App. 269, 273–74, 431 P.2d 910, 914–15 (1967) (holding that a principal's "negligence or omission in allowing his agent" to run the business in his absence created apparent authority), in the apparent agency cases decided by the Arizona Supreme Court, the "negligent" language is not present. *See Miller*, 153 Ariz. at 589, 739 P.2d at 810; *Gulf. Ins. Co. v. Grisham*, 126 Ariz. 123, 126, 613 P.2d 283, 286 (1980) (holding that "[t]he ostensible agent is one where the principal has intentionally or inadvertently induced third persons to believe that such a person was its agent although no actual or express authority was conferred on him as agent") (quoting *Canyon State Canners, Inc. v. Hooks*, 74 Ariz. 70, 73, 243 P.2d 1023, 1025 (1952)). Following those cases, some action by the principal is required; that is, a relationship of apparent agency cannot be presumed from the simple fact that a surgeon has staff privileges at a hospital.

¶ 14 FMC makes passing references to *Barrett v. Samaritan Health Services, Inc.*, 153 Ariz. 138, 735 P.2d 460 (App.1987), and *Beeck v. Tucson General Hospital*, 18 Ariz. App. 165, 500 P.2d 1153 (1972), both of which cases involved similar issues. In *Barrett*, an emergency room doctor employed by a separate physician's group was found to be the apparent agent of the hospital. The court relied on the facts that the hospital "provided the emergency room facilities and equipment . . . nurses and all other support personnel;" the hospital "promulgated rules and procedures to be followed by [the physician's group] in treating emergency room patients," and the plaintiff "did not have the opportunity to choose" the treating physician because the physician was chosen by the hospital. Thus, the court concluded, "[t]he evidence falls squarely within the ostensible agency principles established in *Beeck*." *Id.* at 146, 735 P.2d at 468.

**5.** The court noted that many courts actually rely on either the Restatement (Second) of Agency § 267 or the Restatement (Second) of Torts § 429 (1965) for the elements of apparent agency. *Id.* at 236 n. 2.

¶ 15 The *Beeck* case, however, involved the issue of actual agency, not apparent agency. At issue was a patient who had been injured by a radiologist. The patient argued that, according to the doctrine of *respondeat superior*, the hospital should be liable for the acts of the radiologist. The trial court granted summary judgment to the hospital, finding that the radiologist was an independent contractor. This court reversed, holding that the radiologist was an employee of the hospital because, among other factors, he was co-chairman of the radiology department, had an employment contract with the hospital, was permitted one month's vacation and was paid a portion of the radiology department's gross profits. 18 Ariz.App. at 169–70, 500 P.2d at 1157–58.

¶ 16 The court in *Beeck* also considered a disclaimer notice signed by the plaintiff that stated, similar to the one at issue, that "the radiologist, pathologist, anesthetist and the like are independent contractors and are not employees or agents of the hospital." *Id.* at 171, 500 P.2d at 1159. The court found the disclaimer to be inoperative, holding that, because the radiologist was an employee of the hospital and not an independent contractor, "the clause reciting him to be so is of no effect." *Id.*

¶ 17 The *Beeck* opinion, therefore, is only instructive on the issue of apparent agency if the tests for apparent agency and actual agency are the same, and they are not. *Compare Reed,* 160 Ariz. at 205, 772 P.2d at 28 (prescribing a three-part test for apparent agency), *with St. Luke's Health Sys. v. State,* 180 Ariz. 373, 377–78, 884 P.2d 259, 263–64 (App.1994) (adopting an eleven-factor test to determine the existence of an actual employment relationship). Because this case involves only apparent agency, neither *Beeck* nor *Barrett* controls.[6]

### B. FMC's Motion for Judgment as a Matter of Law

¶ 18 FMC argues that the trial court erred in failing to grant it JMOL because Mrs. Henry did not establish any of the three elements required to establish an apparent agency relationship. Our review is *de novo.* *See Crackel v. Allstate Ins. Co.,* 208 Ariz. 252, 259–60 ¶ 20, 92 P.3d 882, 889–90 (App.2004). A party is entitled to JMOL if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party on that issue." *Id.* at ¶ 20 (quoting Ariz. R. Civ. P. 50(a)(1)). Mrs. Henry failed to present a question of fact to support her reliance upon FMC's conduct, and, therefore, FMC was entitled to JMOL.

### 1. FMC's Conduct

¶ 19 Both parties rely heavily on the forms that Mrs. Henry signed upon her admission to FMC and before her surgery as support for their positions regarding the element of conduct of the test of apparent agency. Mrs. Henry argues that these forms show conduct by FMC that induced her to believe that Dr. Knoll was FMC's agent. FMC insists that these forms negate the possibility that it could have conducted itself in a manner that would have led Mrs. Henry to believe that there was an agency relationship between it and Dr. Knoll. Rather, FMC contends, the forms put patients on notice that physicians at FMC were neither its agents nor its employees.

¶ 20 The FMC admission form stated:

> The undersigned recognizes that all physicians furnishing services to the patient, including the radiologist, pathologist, anesthesiologist, and like may be independent contractors and neither employed nor agents of the hospital. . . .

Mrs. Henry argues that this form was insufficient to place her on notice of the independent-contractor status of Dr. Knoll because (1) it does not mention surgeons; (2) it does not identify Dr. Knoll; and (3) it does not state that all physicians are not FMC employees or agents, only that they may not be.

---

**6.** FMC relies on *Gregg v. National Medical Health Care Services, Inc.,* 145 Ariz. 51, 54, 699 P.2d 925, 928 (App.1985), in which the plaintiff argued that the hospital was vicariously liable for the death of her husband because the doctor was an actual employee or agent of the hospital. However, this court specifically refused to consider apparent agency because this theory was not asserted until the plaintiff filed her reply brief. *Id.* at 54 n. 1, 699 P.2d at 928 n. 1.

¶ 21 In *Burless,* a similar form was held to be ineffective as a disclaimer of a hospital's vicarious liability. In that case, a patient was required to sign a form upon his admission to the hospital that stated "I understand that the faculty physicians and resident physicians who provide treatment in the hospital are not employees of the hospital." 601 S.E.2d at 97. The court rejected the hospital's argument that the form was sufficient to put a patient on notice that his treating physicians were not hospital employees because a patient could not be expected to distinguish among faculty physicians, resident physicians and all other physicians with hospital privileges. *Id.* Thus, "for this disclaimer to be meaningful, a patient would literally have to inquire into the employment status of everyone treating him or her." *Id.*

■ ¶ 22 The admission form relied upon by FMC suffers from the same defect as the form in *Burless.* The form states that physicians may be independent contractors. This does not establish what relationship Dr. Knoll or any other physician may have had with FMC. Rather, it places the burden on the patient to inquire of each physician his or her status and fails to give a definite statement of the physician's relationship with the hospital. We agree with the court in *Burless* that "[i]t would be absurd to require . . . a patient . . . to inquire of each person who treated him whether he is an employee of the hospital or an independent contractor." *Id.* (quoting *Capan v. Divine Providence Hosp.,* 287 Pa.Super. 364, 430 A.2d 647, 649 (1980)).

¶ 23 FMC also claims that the consent forms that Mrs. Henry signed before her surgery establish as a matter of law that Dr. Knoll was not an employee or agent of FMC. However, these forms are no better than the one that Mrs. Henry signed upon her admission to FMC. The surgical consent forms state:

> I understand that the physician(s) in attendance at such operation(s) or procedure(s) for the purpose of administering anesthesia, and the physicians performing services involving pathology and radiology, are not the agents, servants, or employees of the hospital nor of any surgeon, but are independent contractors. The hospital is not liable for actions or omissions of independent contractors.

This language is not as clear as FMC claims it to be. It specifies anesthesiologists, pathologists and radiologists. It does not include surgeons or even "all physicians" in its explanation of who may be an independent contractor.

¶ 24 The language in these forms does not establish as a matter of law that Dr. Knoll, a surgeon, was not an employee or agent of FMC. Mrs. Henry presented evidence that an FMC nurse provided these forms to her at admission and before surgery. The forms have an FMC heading. Because these forms fail to conclusively state whether the surgeon who operated on Henry was a hospital agent or employee, while specifically disclaiming an employment relationship with other physicians, a reasonable person in Mrs. Henry's situation could have concluded that Dr. Knoll was either an FMC employee or agent. Thus, FMC's requirement that Mrs. Henry sign these forms constituted conduct sufficient to at least raise a question of fact as to the first element of the test for apparent agency.

### 2. *Mrs. Henry's Reliance*

■ ¶ 25 To establish an apparent agency relationship, the third party must have relied on the principal's conduct. *Reed,* 160 Ariz. at 205, 772 P.2d at 28. In considering apparent agency, "the emphasis shifts to the third party's reliance on the acts of the alleged principal and the agent as opposed to any express or implied grant by the principal." *Id.* FMC argues that there is no evidence that Mrs. Henry relied on its conduct, emphasizing her testimony that the FMC admission and consent forms did not cause her to form an opinion whether Dr. Knoll was an FMC employee or agent.

¶ 26 Mrs. Henry testified that she thought that Dr. Knoll was an FMC employee because hospitals have their own doctors and she had no reason to ask about his relationship with FMC because she "was relying on the hospital and the doctors." She also testified that the Clinic to which she usually went employed its own doctors, although she did

not know about FMC. She thought that Dr. Knoll was an FMC employee because he was a surgeon.

**¶ 27** This testimony establishes that Mrs. Henry's belief was based on her personal opinions and thoughts; she believed that Dr. Knoll was an FMC employee because he was a surgeon at the hospital. "[T]he principal [must] be responsible for the information which comes to the mind of the third person," Restatement (Second) of Agency § 27 cmt. a, and such was not Mrs. Henry's case.

**¶ 28** As stated above, although courts in other jurisdictions presume reliance when a patient looks to the hospital for services rather than to her own physician and the hospital fails to put the patient on notice of the independent-contractor relationship, *Mejia,* 122 Cal.Rptr.2d at 237; *Sword,* 714 N.E.2d at 152; *Burless,* 601 S.E.2d at 97, this is not the law in Arizona. Therefore, we cannot presume reliance, and Mrs. Henry has failed to provide a sufficient evidentiary basis for reliance on FMC to establish an apparent agency relationship. Accordingly, we need not consider whether any such reliance was reasonable.

### CONCLUSION

**¶ 29** Because the basis for an apparent agency relationship was not established, FMC is entitled to JMOL, and we therefore need not address the remaining issues on appeal. We remand this matter with instructions to the superior court to enter judgment in favor of FMC in accordance with this opinion.

CONCURRING: MAURICE PORTLEY, Presiding Judge.

BARKER, Judge, concurring specially.

**¶ 30** I agree with the result, but not all of the reasoning. For that reason, I write separately.

**¶ 31** The majority correctly rejects the proposition from *Mejia v. Community Hospital of San Bernardino,* 99 Cal.App.4th 1448, 122 Cal.Rptr.2d 233, 237 (2002) that a patient who relies on a hospital to provide her with a physician may reasonably pre-

sume that the physician is an agent of the hospital unless the patient has reason to know otherwise. *Supra* ¶¶ 9–12. The majority properly sets forth the three-prong test for apparent agency in Arizona: (1) conduct by the principal from which a third party could conclude that a person is authorized to act on the principal's behalf, (2) reliance on that conduct by the third party, and (3) the reliance is reasonable. *Reed v. Gershweir,* 160 Ariz. 203, 205, 772 P.2d 26, 28 (App.1989); *Miller v. Mason–McDuffie Co. of S. Cal.,* 153 Ariz. 585, 589, 739 P.2d 806, 810 (1987); *supra* ¶ 7. All three elements must be shown. *Reed,* 160 Ariz. at 205, 772 P.2d at 28. Accordingly, the failure to establish any one element means that there is no apparent agency as a matter of law.

**¶ 32** I agree with the majority that there is no evidence in this record, as to element two, from which a trier of fact could conclude that Mrs. Henry relied upon any conduct of the hospital that the doctor here was the hospital's agent. *Supra* ¶¶ 25–28. Judgment as a matter of law in favor of FMC is therefore appropriate. Having found that element two was not satisfied, we need not discuss (and particularly need not *determine* ) issues pertaining to element one. Those issues include whether (a) the alleged conduct was a representation of agency by the alleged principal, *supra* ¶¶ 19–24, and (b) whether negligent conduct, as well as intentional or inadvertent conduct, may satisfy the conduct requirement of element one. *Supra* ¶ 13.

**¶ 33** Because the resolution of both these aspects of element one of the apparent agency test are not necessary to our decision, those portions of the opinion are dicta. *Town of Chino Valley v. City of Prescott,* 131 Ariz. 78, 81, 638 P.2d 1324, 1327 (1981) (stating dictum is a "court's statement on a question not necessarily in the case and, hence, is without force of adjudication"). For that reason, I do not join in those portions of the opinion. For that same reason, and because the resolution of those issues is not straightforward (as the majority notes, *supra* ¶ 13, there are cases from this court that can be construed to be in disagreement with cases from the Arizona Supreme Court), I do not take up those issues in this concurrence.

Those issues are best left to a day when a case requires that we resolve them.